**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | NO.    A-25-CR-00332 (ADA) |
| | § | |
| **JAMES WESLEY BURGER** | § | |

**MOTION TO DISMISS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ALAN D. ALBRIGHT:

A three-count indictment alleges that JAMES WESLEY BURGER violated 18 U.S.C. § 875(c) by making unlawful interstate threatening communications. Two grounds bar this prosecution and call for dismissal of the indictment.  First, the prosecution violates the First Amendment's Free Speech Clause because it seeks to punish Mr. Burger for statements he made in the context of playing a virtual character in a video game.   Because such non-serious expressions fail to convey an intent to commit an unlawful act of violence, the First Amendment shields Mr. Burger from prosecution for this speech.  *Virginia v. Black,* 538 U.S. 343, 359 (2003). Second, the prosecution violates the Fifth Amendment's Due Process Clause because it deploys a threat statute that is void for vagueness.  The statute fails to give a person of ordinary intelligence notice of what conduct is forbidden – it provides no fair warning of what statements will qualify as criminal threats.  *Pappachristou v. Jacksonville,* 405 US. 156 (1972).

I.      **Factual Background**

        **A.  Roblox**

        The "threatening communications" occurred on Roblox.  Roblox is an online video game platform and creation tool.   It allows players to create their own "experiences" or "games" on public or personal servers and to disseminate those games to other players. James Yaden, *What is*

*Roblox?*, DIGITAL TRENDS (June 17, 2020), https://www.digitaltrends.com/gaming/what-is-roblox. The player created games and experiences can then be shared to and played by other players. *Id.*

Most worlds visited by a player in Roblox were created by another player. *Id.* Roblox players, also known as Robloxians, interact with each other in the form of avatars. *Id.* These they create from an infinite variety of options. Robloxians name their avatar a name (not their real name) and join the millions of games or experiences that Roblox provides. The avatars can chat and message each other as they play together. Roblox has established itself as one of the most popular online gaming platforms for children and teens, boasting over 85 million active users across the world. https://www.rollingstone.com/culture/rs-gaming/roblox-protests-kids-clashing-ice-1235367412/.

A Roblox "experience" takes place in an interactive and immersive 3D environment. *What are Experiences?* Roblox Learn. YouTube – April 28, 2025, youtube.colm/watch?v=_RxK612y7Ac. They number in the millions. They give Robloxians an infinite range of places, communities, and worlds to explore. Experiences stretch the boundaries of imagination and taste. Some are as good-natured as going to a famous museum, a foreign country, or a rock concert. *Id.* Other experiences attract Robloxians seeking an edgier playground. They include participating in riots with ICE, where Robloxians can roleplay as both protestors and law enforcement. https://rollingstone.com/culture/rs-gaming/roblox-protests-kids-clashing-1235367412. Or engaging with a Roblox stripper in a club, where she will dance with you and have sex. https://www.rollingstone.com/culture/culture-features/roblox-virtual-strip-clubs-condo-games-sex-1197237. Or roleplaying as a mass shooter at Columbine, Uvalde, and Parkland, in highly detailed recreations of these actual tragedies.

https://www.adl.org/resources/article/dark-side-roblox-active shooter-studios-create-maps-based-real-life-mass.   Whatever experience Robloxians pick, they frolic in a virtual world that is uninhabited by human beings.

The three threatening communications charged in the indictment took place in a Roblox experience called "Church."   The Church experience, created by a Robloxian, @franxxly, in September 2017, was enormously popular; it logged 20 million visits, until it was taken down after Mr. Burger's arrest.    *Roblox banned the most Toxic Game,* youtube.com/watch?v+kLPTY5HH6ZU – post by greenlegocats123 (last seen October 16, 2025).[1] Robloxians entered Church through a set of doors.  *Id.*  Inside appeared rows of pews and a pulpit, with a large cross on a wall facing the entrance.  *Id.*   The bare space was the stage for the experience.  Robloxians did nothing more than walk around and argue.  *Id.*  This simple experience drew what one gaming blogger described as "one of the strangest playerbases in all of gaming as its community turned it into a weird toxic debate game."  *Id.*

 Upon entering Church, a Robloxian played with other avatars.  They gathered in groups and chatted.  Their words appeared in bubbles above their head, like in a comic book.   The chat bubbles lasted 10 seconds then disappeared.    To visualize the experience, imagine a non-denominational 3-D church space filled with avatars.  Each avatar appears in a form and outfit provided by Roblox.  Avatars might be Lego characters dressed like storm troopers, policemen, skateboarders, or sheikhs.  They might take the shape of monsters, goblins, ghouls, or dragons. As they talk, their chats bubble up and appear then disappear.  It was here that the avatars Crazz3pain and Ghurabaah made the statements the indictment charges to be threatening communications.

---

[1] This post on YouTube was made to explain what led up to Roblox removing the Church experience after Mr. Burger's arrest in February 2025.

The Robloxian who would call the FBI threat line to report the allegation in Count One first met Crazz3pain in Church on January 21, 2025.   Like Mr. Burger, the tipster was a senior in High School.[2]   The tipster knew Church as a "hub for about 100 Roblox users that range from decent people to people engaged in hate speech and other potentially criminal activities."[3]   The tipster was "upset" with Robloxians Crazz3pain and Xandersrange because they both demonstrated "Islamic extremist beliefs."[4]  On this visit, he saw Crazz3pain tell Xandersrange that he was "willing to kill Shia Muslims at their mosque."  The tipster left the experience.[5]

The tipster rejoined Church two days later, on January 23, 2025.[6]  He observed Crazz3pain and Xandersrange chatting with another Robloxian about Christianity and Islam.  *Id.*  When the tipster shared his perspective, Xandersrange told him he "should not speak about religious matters without knowledge."  *Id.* The tipster left the group but watched their chat.[7]   Crazz3pain said he owned at least one firearm.  *Id.*  Crazz3pain discussed his own martyrdom.  It appeared it could occur at a "Christian concert type event."  *Id.*  The tipster took screenshots of the chats, including the "grievous wound" phrase alleged in Count One.  This appears in the first shot below.   In the third screenshot, Crazz3pain says "It will be a glorious wound" "Upon their capital."  The shots appear on the following pages.   They lack a time stamp.   The chronology in real time of the shots cannot be determined.

---

[2] FBI Serial 10, 1/29/25, by SA Vincent Cavello, documenting telephonic interview of tipster.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id*.











Count Two charges a statement that Crazz3pain made in Church four days later on January 27, 2025: "I've come to conclude it will befall the 12 of Shawal aa/And it will be a music festival/Attracting bounties of Christians s/In'shaa'allah we will attain martyrdom/And deal a

grievous wound upon the followers of the Cross/Pray for me and enjoin yourself to martyrdom[.]" The tipster took no screenshots of this statement. What other Robloxians were with Crazz3pain is not known, nor is the reaction, if any, to the statement.

The statement was recovered when the FBI reviewed data produced from a keystroke logger that Mr. Burger's uncle, Jim Best, installed on the family laptop. The uncle gave the FBI data from the keystroke logger on March 4, 2025, a week after Mr. Burger's arrest.[8] The keystroke logger used software called SpyTech, computer monitoring software which captures all keystrokes and screen captures what is being viewed by the computer user. *Id.* The statement appears in Log 24, corresponding to January 27, 2025, at 8:27. The FBI report notes that "several logs were identified with violent or threatening statements but were found on Roblox (a gaming platform) and deemed to be relevant to the game rather than a specific person or place."

Count Three charges statements made by Ghurabaah, a different Roblox avatar of Mr. Burger's, on January 21, 2025. They were made in Church. Ghurabaah was sitting in a pew. Avatars Phantomcontender and Xandersrange were there also. Screenshots show Ghurabaah state in chat bubbles: 1) "Yes I have guns Incase the authorities want to arrest me; 2) I am ready To sacrifice my life for my Rabb; 3) Detonate what I have prepared Of munitions And use my firearms; 4) To take many with me, and 5)Yes wish me luck On the path of martyrdom In'shaa'allah. They appear in order as follows:

---

[8] FBI Serial 8, 3/26/25, by SA Gutierrez-Rierra, Documenting Review of Key Stroke Logger Provided by Jim Best.







`





The images provide no context for why Ghurabaah was chatting to the group about having guns and munitions, how he would use them to achieve martyrdom if arrested, or when authorities would arrest him and for what reason would his arrest occur.

### B.  Legal Standard

Mr. Burger moves to dismiss this indictment before trial as it seeks to punish him for speech protected under the First Amendment.  He also challenges the statute being used to prosecute him because it fails to provide fair warning of what it proscribes in violation of the Fifth Amendment.  This motion is the necessary and proper way to challenge Mr. Burger's prosecution.

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." FED. R. CRIM. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005); *see* FED. R. CRIM. P. 12(d) (permitting the court to rule on a motion involving factual issues provided the court states its essential findings on the record); *see also*, *United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) ("a pretrial dismissal is essentially a determination that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt."). Otherwise, the court would waste resources by allowing a case to proceed to trial and later dismissing it based on the same legal argument and facts presented through a pretrial motion. *See Flores*, 404 F.3d at 325.  Here, the issues are a pure question of law in the presence of undisputed facts.

### C.  Argument

#### a.  **Mr. Burger's statements are protected by the First Amendment**

The First Amendment commands that speech, even that occurring in a video gaming platform such as Roblox, be free from government interference.  *Brown v. Entertainment Merchants Ass'n,* 564 U.S. 786 (2011).  Because prosecution under 18 U.S.C. § 875(c) involves

punishment of pure speech, First Amendment protections apply. *See Watts v. United States*, 394 U.S. 705, 707 (1969) (holding in the context of 18 U.S.C. § 871, which criminalizes threats against the President, that statutes which make criminal pure speech must be interpreted with the commands of the First Amendment in mind). "What is a threat must be distinguished from what is constitutionally protected speech." *Id.*

The First Amendment states in relevant part, "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. The Free Speech Clause exists to protect discourse on all matters. The First Amendment protects speech even when the subject or manner of expression is uncomfortable or unconventional. The "bedrock principle underlying the First Amendment" is "that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas* v. *Johnson*, 491 U.S. 397, 414 (1989) (flag burning prosecution violated First Amendment). "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger* v. *Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). Rather, a "hallmark" of free speech is "to allow 'free trade in ideas' - even ideas that the overwhelming majority of people might find distasteful or discomforting." *Virginia v. Black*, 538 U.S. 343, 358 (2003) (holding Va. cross burning statute unconstitutional because statute presumed intent to intimidate from act of burning a cross) (quoting *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting)).

The First Amendment permits restrictions upon the content of speech only in a few limited areas. *Counterman v. Colorado*, 600 U.S. 66, 73 (2023). In this case, the category of unprotected speech the prosecution must establish falls under "true threats" of violence. *Id.* To be a "true threat," the statement, "when taken in context," must convey a real possibility that violence will follow. *Id.* at 74. This distinguishes a "true threat" from jests or hyperbole. *Id.* True threats are

"serious expressions" conveying that the speaker means to "commit an act of unlawful violence to a particular group or individuals." *Id.* (quoting *Black*, 538 U.S. at 359).   The government must prove a "true threat" to pierce the First Amendment's shield, regardless of the speaker's intent. *See Watts,* 394 U.S. at 708.

For a communication to be a threat under § 875(c), the Fifth Circuit requires "in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *United States v. Morales*, 272 F.3d 284, 287 (5th Cir. 2001) (quoting *United States v. Myers,* 104 F.3d 76, 79 (5th Cir.1997)). A key to distinguishing "true threats" from speech protected by the First Amendment is if the alleged threat had an "immediacy, or clarity of purpose." *Shackelford v. Shirley*, 948 F.2d 935, 939 (5th Cir. 1991).

The Second Circuit, in interpreting § 875, reasoned that to be a "true threat" the statement must "on its face and in the circumstances in which it is made" be so "unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution." *United States v. Kelner*, 534 F.2d 1020, 1027 (2d Cir. 1976). Such a requirement is consistent with the First Amendment, which allows for prosecution when "a communication has become 'so interlocked with violent conduct as to constitute for all practical purposes part of the (proscribed) action itself.'" *Id.* (quoting T. Emerson, The System of Freedom of Expression, 329 (1970)).

Furthermore, "[i]n order to convict, a fact finder must determine that the recipient of the in-context threat reasonably feared it would be carried out." *Morales*, 272 F.3d at 287 (quoting *Myers*, 104 F.3d at 80). In deciding whether speech is an unprotected "true threat," context is critical. *See Watts*, 394 US at 706, 708 (considering the context, the expressly conditional nature

of the statement, and the reaction of the listeners when evaluating whether a statement is a true threat).

The communications that form the basis of the three counts of the indictment are not true threats, and therefore the statements are protected speech under the First Amendment.   None of the statements contain the hallmarks of a true threat.

> i. *The statement to "deal a grievous wound upon the followers of the Cross" is not a true threat, but is rather protected speech under the First Amendment*

Count One charges the statement to "deal a grievous wound upon the followers of the Cross." This falls outside what it means to be a true threat. "True threats are serious expressions conveying that a speaker means to commit an act of unlawful violence." *Counterman*, 600 U.S. at 74. This statement lacks specificity as to the place, time, or method of the purported threat, and fails to identify a particular person or group of "followers of the cross" that it targets.  No one can predict what would happen if the speaker acted according to its tenor.  No specific person or group can rationally be placed in fear through this statement.  It expresses unfocused enmity against Christians as a whole.  Accordingly, this is protected speech under the First Amendment.  The government cannot criminalize anti-Christian speech simply "because of its message, its ideas, its subject matter, or its content. *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002).

Moreover, the absurd context in which the statement was made undermines its veracity as a threat. *Bailey v. Iles*, 87 F.4th 275, 285 (5th Cir. 2023) (citing *Watts v. United States*, 394 U.S. 705, 708 (1969)). Nothing was real about its context.  It could not have been intended to be real nor expected to be perceived as real.  It was made by a Robloxian character in a virtual 3-D space called Church.  The character, Crazz3pain, was portraying a fundamentalist Muslim.  He espoused extremist views that included martyrdom.  He expressed them playing a game about arguing over religious matters.  Provocation and trolling were part of the game.  The First Amendment bars the

government from punishing this type of speech.   Count One must be dismissed to vindicate its

protections.

           ii.   *The statement "I've come to conclude it will befall the 12 of Shawal aa/ And it will be a music festival/Attracting bounties of Christians s/In'shaa'allah we will attain martyrdom/And deal a grievous wound upon the followers of the Cross/Pray for me and enjoin yourself to martyrdom" fails as a true threat*

The statement in Count Two, like the one alleged in Count One, had no chance of being

understood as true threat.  *Bailey*, 87 F.4th at 285.   It was made on Roblox and captured on a

keystroke logger.[9]  The key logs do not show what others in the game said, so the full context for

the statement is lost.   The statement stands on its own.  Nothing about it meets the true threat test.

It lacks the context to have "a reasonable tendency to create apprehension that its originator

will act according to its tenor.  *Morales,* 272 F.3d at 287.   It lacks "immediacy, or clarity of

purpose." *Shackelford,* 948 F.2d at 939.  It contains no "imminent prospect of execution." *Kelner,*

534 F.2d at 1027.  It fails to provide any details from which one may conclude that there exists "a

real possibility that violence will follow." *Counterman,* 600 U.S. at 73.   The gaming context

keeps it from achieving a gravity of purpose.

It is not a "serious expression" and does not convey that the speaker means to "commit an

act of unlawful violence to a particular group of individuals." *Black*, 538 U.S. at 359.  Without a

sufficiently specific target, there can be no reasonable fear the threat could be carried out. *See*

*Myers*, 104 F.3d at 80.   The statement is constitutionally protected speech and count two of the

indictment must also be dismissed.

---

[9]  FBI Serial 8, 3/26/25, By SA Gutierrez-Riera, Documenting Review of Key Stroke Logger Provided by Jim Best.

iii.   *The statement "I have guns In[]case the authorities want to arrest me ... I am ready To sacrifice my life for my Rabb .... Detonate what I've prepared Of munitions And use my firearms To take many with me, Yes wish me luck On the path of martyrdom In'shaa'allah" fails as a true threat.*

The statement in Count Three also fails the true threat test.   It was made on Roblox in the Church experience, and this context drained the statement of gravity.   It was also conditional.   The threat of "martyrdom" depended upon the arrest of Ghurabaah.   The "expressly conditional nature of the statement" made it highly unlikely that a listener would perceive violent action to be imminent.   *See, Watts,* 394 U.S. at 708.   The speech was just hyperbole.   The speaker advocated for martyrdom but could not say when or how it might happen.   How could he?   It was beyond Ghurabaah's control.   It depended on Ghurabaah's arrest, which in turn depended upon Ghurabaah being real, with real guns and munitions, in the real world.   But this was never true.

### b.   **Section 875(c) is unconstitutionally vague and overbroad**

A criminal statute is void for vagueness if the conduct it prohibits is not clearly defined. *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972). A criminal statute is unconstitutionally vague if it (1) "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden," *United States v. Harriss*, 347 U.S. 612, 617 (1954), or (2) "encourages arbitrary and erratic arrests and convictions." *Papachristou v. Jacksonville*, 405 U.S. 156, 162 (1972). Fair notice for people "of common intelligence" is the "first essential of due process." *United States v. Davis*, 588 U.S. 445, 451 (2019) (cleaned up). For its part, the bar on arbitrary enforcement serves the separation of powers—Congress must clearly define crimes, not unelected "police officers, prosecutors, juries, and judges." *Sessions v. Dimaya*, 584 U.S. 148, 155-56 (2018). Importantly, "standards of permissible statutory vagueness are strict in the area of free expression," meaning Congress may regulate in the realm of the First Amendment "only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 432-32 (1963).

Because § 875(c) implicates First Amendment freedoms, a heightened standard of scrutiny applies. For a challenge based on the First Amendment, courts may consider whether the statute is unconstitutionally vague on its face. *United States v. Williams*, 553 U.S. 285, 304 (2008). In the First Amendment context, "a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." *Id.* Section 875(c) is unconstitutionally vague because it fails to provide a person of ordinary intelligence fair notice of what speech is prohibited. While a scienter requirement "may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed," *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982), a statute that fails to include any scienter requirement lays "a trap for those who act in good faith." *Colautti v. Franklin*, 439 U.S. 379, 395 (1979). While, in *Counterman*, the Supreme Court held that in prosecutions of true threats the government must prove that "the defendant had some understanding of his statements' threatening character," 600 U.S. at 73, Section 875(c) provides no such notice of this requirement. This omission from the statute chills the exercise of First Amendment freedoms.

Furthermore, in the context of laws criminalizing pure speech[10], the reckless *mens rea* is unconstitutionally vague. In her concurrence in *Counterman*, Justice Sotomayor stated:

> I agree with the Court's conclusion that the First Amendment requires a subjective *mens rea* in true-threats cases, and I also agree that recklessness is amply sufficient for this case. Yet I would stop there, leaving for another day the question of the specific *mens rea* required to prosecute true threats generally. If that question is reached, however, the answer is that true threats encompass a narrow band of intentional threats. Especially in a climate of intense polarization, it is dangerous to allow criminal prosecutions for heated words based solely on an amorphous recklessness standard. Our society has often concluded that an intent standard sets a proper balance between safety and the need for a guilty mind, even

---

[10] In *Counterman*, the defendant was convicted under a Colorado stalking statute which unlawful to "[r]epeatedly ... make[ ] any form of communication with another person" in "a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... to suffer serious emotional distress." 600 U.S. at 70. The statute of conviction applies to someone who "[r]epeatedly follows, approaches, contacts, places under surveillance, or makes any form of communication with another person ... in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person ... serious emotional distress." *Id.* at 86 n. 1 (Sotomayor, J., concurring).

in cases that do not involve the First Amendment. Surely when the power of the State is called upon to imprison someone based on the content of their words alone, this standard cannot be considered excessive.

600 U.S. at 104–05 (Sotomayor, J., concurring).

Here we are. Mr. Burger faces the situation to which Justice Sotomayor referred. Mr. Burger faces prosecution for pure speech that was not directed at any purported victim of an alleged threat. As Justice Sotomayor recognized "[t]he risk of overcriminalizing upsetting or frightening speech has only been increased by the internet." *Id.* at 87. Furthermore, the burdens of over-criminalization will fall hardest on certain groups, "including religious and cultural minorities," whose language can be "more susceptible to being misinterpreted by outsiders. And unfortunately yet predictably, racial and cultural stereotypes can also influence whether speech is perceived as dangerous." *Id.* at 88-89. Here, the misinterpretation fell to those outside the gaming space.

Thus, requiring only a reckless *mens rea* renders Section 875(c) unconstitutionally vague. A "determination of when angry hyperbole crosses the line will depend on amorphous norms around language, which will vary greatly from one discursive community to another." *Id.* at 88. Such a standard does not provide fair notice of what type of speech is prohibited, particularly in the context of statements made on the internet or in a video game. The statute is, therefore, unconstitutionally vague.

Relatedly, Section 875(c) is also unconstitutionally overbroad. "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." *Ashcroft v. Free Speech Coal.,* 535 U.S. 234, 255 (2002). Criminal statutes, like the one at issue here, "must be scrutinized with particular care." *City of Houston, Tex. v. Hill*, 482 U.S. 451, 459 (1987). The Supreme Court has held "[t]he First

Amendment doctrine of overbreadth is an exception to our normal rule regarding the standards for facial challenges." *Virginia v. Hicks*, 539 U.S. 113, 118 (2003). "The showing that a law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep suffices to invalidate *all* enforcement of that law, until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Id.* at 118-19 (cleaned up). Thus, criminal statutes "that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *Id.*

Section 875(c) is also unconstitutionally overbroad because it prohibits a substantial amount of protected speech. If the Court interprets § 875(c) to prohibit the statements alleged in the indictment, which do not identify any specific target, any specific act, or any specific time or place, then § 875(c) is overbroad. Put simply, absent a reading that a purported threat must specify a particular victim and threatened act in order to constitute a "true threat," the statute becomes so overbroad as to be facially unconstitutional. A non-specific statement of ill-will is not a "threat." *See Black*, 538 U.S. at 359. Instead, the threat must be "a serious expression of an intent to commit an act of unlawful violence to a *particular* individual or group of individuals." *Id*. (emphasis added).

Section 875(c) is unconstitutionally vague and overbroad, and Mr. Burger moves to dismiss the indictment.

### D.  Conclusion

For the foregoing reasons, the Court should dismiss the indictment.

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **NO.    A-25-CR-00332 (ADA)** |
| | § | |
| **JAMES WESLEY BURGER** | § | |

**O R D E R**

On this date, the Court considered Defendant's Motion to Dismiss.  The Court, having considered the motion, is of the opinion that the motion should be granted.

IT IS THEREFORE **ORDERED** THAT the Defendant's Motion to Dismiss is hereby **GRANTED.**  The Indictment is HEREBY DISMISSED.

SIGNED this _____ day of _____, 2025.

_____
ALAN D. ALBRIGHT
UNITED STATES DISTRICT JUDGE