IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.  1:25-CR-00332-ADA |
| | ) | |
| JAMES WESLEY BURGER | ) | |

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS INDICTMENT**

The United States of America, by and through its undersigned Attorney, hereby files its Response to Defendant's Motion to Dismiss Indictment, and states:

1.	Defendant raises two issues in his motion. First, the Defendant claims that the Defendant's threats were not in fact threats but him merely "playing a virtual character in a video game" and thus protected by the First Amendment. (ECF 51 at 1). Defendant's second issue is that the statute that the Defendant is charged with, Title 18, United States Code, Section 875(c), is void for vagueness under the Fifth Amendment Due Process clause in that it provides no warning of what statements qualify as criminal threats. *Id.*  Neither of the Defendant's challenges have merit.

**Statement of the Case**

2.	The Defendant is charged in Count One with Threatening Interstate Communications in violation of 18 U.S.C. § 875(c). The Indictment charges:

> On or about January 23, 2025, in the Western District of Texas and elsewhere, Defendant,
> **JAMES WESLEY BURGER,**
> did knowingly transmit in interstate commerce a communication, specifically, statements on Roblox publicly accessible to attack a Christian concert, and the communication contained a threat to injure the person of another.  Specifically, the communication included a threat to "deal a grievous wound upon the followers of the Cross," for the purpose of issuing a threat, with knowledge that

the communication will be viewed as a threat, and recklessly disregarding a substantial risk that his communication would be understood as a threat.

3.     The Defendant is charged in Count Two with Threatening Interstate Communications in violation of 18 U.S.C. § 875(c). The Indictment charges:

On or about January 27, 2025, in the Western District of Texas and elsewhere, Defendant,
**JAMES WESLEY BURGER,**
did knowingly transmit in interstate commerce a communication, specifically, statements on Roblox publicly accessible to attack a Christian concert, and the communication contained a threat to injure the person of another. Specifically, the communication included:

> "I've come to conclude it will befall the 12 of Shawwal aa/And it will be a music festival/Attracting bounties of Christians s/In'shaa'allah we willl attain martyrdom /And deal a grevious wound upon the followers of the Cross /Pray for me and enjoin yourself to martyrdom,"

for the purpose of issuing a threat, with knowledge that the communication will be viewed as a threat, and recklessly disregarding a substantial risk that his communication would be understood as a threat.

4.     The Defendant is charged in Count Three with Threatening Interstate Communications in violation of 18 U.S.C. § 875(c). The Indictment charges:

On or about January 21, 2025, in the Western District of Texas and elsewhere, Defendant,
**JAMES WESLEY BURGER,**
did knowingly transmit in interstate commerce a communication, specifically, statements on Roblox publicly accessible to attack a Christian concert, and the communication contained a threat to injure the person of another. Specifically, the communication included a threat

> "I have guns In[ ]case the authorities want to arrest me . . .I am ready To sacrifice my life for my Rabb….[The Defendant would] "Detonate what I've prepared Of munitions And use my firearms To take many with me," and "Yes wish me luck On the path of martyrdom In'shaa'allah."

for the purpose of issuing a threat, with knowledge that the communication will be viewed as a threat, and recklessly disregarding a substantial risk that his communication would be understood as a threat.

2

**Statement of Facts**

5.  This case started when two separate concerned citizens on opposite ends of the United States, one on January 21, 2025 (Count Three) and one on January 23, 2025 (Count One), were in the gaming and communication apps Discord and Roblox, and observed a person, now identified as the Defendant, making the threatening statements regarding attacking Christians and/or a Chrisian concert in April 2025 for which the Defendant is now charged. Each of these two witnesses will testify they are experienced in these online forums and can differentiate between individuals "trolling," i.e., attempting to anger others, individuals solely being edgy, or individuals playing a role in a game. Each of these witnesses on separate days believed that the Defendant, using two separate screen names as aliases, was serious about carrying out the threats he made and each witness independently contacted the FBI's National Threat Operation Center (NTOC) so that they could help avert the Defendant's planned attacks. Both of these concerned citizens happen to be practicing Muslims and had concerns about the Defendant's violent Islamic extremist beliefs.

6.  On January 23, 2025, as charged in Count One, the Defendant used his "crazz3pain" alias to state: "But it is worth the delays and the patience." When questioned by his cohort with the screenname "xandersrange," who FBI determined to be in the Middle East, the Defendant responded "It will be months. Shawwal. April. It will be a glorious wound. Upon their capitol. And deal a grievous wound upon the followers of the Cross." Xandersrange responds "Akhi, we will make dua for u once u martyr. Ill keep u in my prayers. InshaAllah ill follow after u." The Defendant states "I cannot confirm anything aloud at the moment. But things are in motion." Xandersrange states to another cohort "ALI MY BROTHER IS ABOUT TO DO HIS ATTACK." The Defendant then states "Don't delay yourselves too long brothers, Jannah

3

[heaven] awaits us." The witness in Nevada saw this threat, believed it to be a true threat, as opposed to trolling or role-playing, and reported the threat to the FBI.

7. On January 27, 2025, as charged in Count 2, in a conversation on Discord, the Defendant contacted his cohort, ".nurullaah," who is the same cohort in the Middle East as "xandersrange," on Roblox, and said, "I think I've come to a conclusion on the when and where" but to maintain operational security, the Defendant and xandersrange switched to Roblox. On Roblox, the Defendant said, "I've come to conclude it will befall the 12 of Shawwal aa. And it will be a music festival. Attracting bounties of Christians s. In'shaa'allah we willl attain martyrdom. And deal a grevious wound upon the followers of the Cross. Pray for me and enjoin yourself to martyrdom."

8. On January 21, 2025, as charged in Count Three, the Defendant using the screen name alias "Gharabahh" stated

> "I have guns In[ ]case the authorities want to arrest me . . .I am ready To sacrifice my life for my Rabb….[The Defendant would] "Detonate what I've prepared Of munitions And use my firearms To take many with me," and "Yes wish me luck On the path of martyrdom In'shaa'allah."

The witness in Pennsylvania saw this threat, believed it to be a true threat, as opposed to trolling or role-playing, and reported the threat to the FBI.

9. Additional intrinsic evidence to be presented to the jury showing that the Defendant was serious about carrying out his attack plans and that in fact his statements were true threats include:

   a. The Defendant's statements captured by the keylogger on his computer that was put in place by Defendant's uncle who had become concerned about the Defendant's behavior:

       1) On July 24, 2024 Defendant typed he wants to attack the Austin Police Department and kill police officers. The Defendant also pledges allegiance to the head of the Islamic State.

       2) On December 10, 2024, Defendant stated to the other person in a Roblox discussion not to discuss the matter as "it is very unsafe And leads to authorities becoming suspect of your actions or intentions."

       3) On February 3, 2025, the Defendant stated: "We're getting our knives sharpened for your throats assdwawdsaawassssw/Mock us all you want but the spark has been lit /The spark of your demise / /You're going to kneel /What happens after is of no knowledge to me."

    b.    The Defendant's Roblox records where he provided bomb-making instructions to an individual purporting to be in Russia.

    c.    The Defendant's Google search terms, including his research of "lone wolf terrorist isis," "Festivals happening near me," suicide attacks, firearm ammunition, "most effective knife type," "what is punishment for the one who insults allah or his messenger".

    d.    The Defendant's February 10, 2025, online conversation about wanting to do a stabbing attack like his friend in Europe.

    e.    The bombmaking plans the Defendant made while in State custody and discovered by the Marshals when he was taken into federal custody.

    f.    The Defendant posting photographs of himself holding firearms.

    g.    The Defendant's jailhouse comments to his aunt when she asked him if she had said something against Mohammad would the defendant harm her and he responded that would be a "redline" for him, which the aunt understood to mean the answer to her question was yes.

      h.      The Defendant's uncle putting a keylogger on the family computer because of concern about the Defendant's activities.

      i.      The Defendant's uncle moving his firearms out of the house because of concern for the Defendant's behavior.

      j.      Defendant sending Islamic State propaganda, including beheading images.

      k.      The Defendant sending a March 26, 2024, message on 4-chan stating that his highest ambition was to be a successful serial killer along with making violent misogynistic and racist comments.

      l.      The Defendant attempted to take a firearm to school when he was a freshman in high school but was prevented from doing so by his grandmother.

      10.      During the non-custodial interview occurring during and after the search of his aunt and uncle's residence where the Defendant lived, the Defendant stated, amongst other admissions:[1]

      a.      That he made the charged threats online and, while not agreeing to the term "terrorist," "undoubtedly the intention and the action [of the threat] is something that is meant to or will…serve as the same means that a terrorist was seeking."

      b.      He agreed that by his definition that "a terrorist is anyone who inflicts terror" and that he was in fact "a terrorist."

      c.      That anyone who insults Allah, the Prophet Mohammad, or Mohammad's wives or companions, should be put to death even if they repent and if anyone came before the

---

[1] At this point in time, it is the Government's intention not to use these statements in it's case-in-chief unless the Defendant opens the door during opening statement or in his questioning of witnesses. The Government also reserves the right to use the statements if the door is opened in the Defendant's case-in-chief for cross examination.

Defendant and insulted Allah, Mohammad or one of his wives, then the Defendant would do everything he could to destroy or kill that person instantly.

    d.    That he discussed with others about him being a martyr at an event.

    e.    His intent in making the threat to the Christian concert was a "heightened emotional response" but that "the deaths of the Christians" "should not be shunned or shied away from," and his "end goal is still the same hasn't shifted a bit and [he] doesn't think it will."

    f.    The Defendant's "end goal" was "to get the hell out of the U.S. and, if I can't, martyrdom or bust."

    g.    The Defendant remembered saying online he would use "a pistol, car, or small hunting rifle" to carry out his attack.

### Argument

11.    The plain text of Section 875(c) states that the statute applies to "any threat to injure the person of another." "It is settled that the [First Amendment of] Constitution does not protect true threats." *Elonis v. United States*, 135 S. Ct. 2001, 2016 (2015). The Supreme Court has defined true threats as "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). The Fifth Circuit has held that the intended target of a threat does not need to be aware of the threat. *See United States v. Morales*, 272 F.3d 284, 288 (5th Cir. 2001).

12.    Defendant's assertion[2] that his threatening communications are not particularly directed enough at person of another to be chargeable was rejected by the Supreme Court's holding in *Virginia v. Black,* 538 U.S. 343, 359 (2003). In *Black*, the Supreme Court determined

---

[2] ECF No. 51 at 17.

7

that a cross burning on private property visible to a public road was a true threat by intimidating and causing fear to particular race of people, despite a lack of words being directed at a particular individual or any showing that any members of that race were even witnesses to the cross burning. *Id.*[3] "The speaker need not actually intend to carry out the threat"; rather, "a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'" *Id.* at 359–60. All of the Defendant's conduct and words as set forth in the Indictment were exactly what the First Amendment does not protect: "advocacy of the use of force or of law violation except where such advocacy is directed to … producing imminent lawless action." *Id.* at 359 (*quoting Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969) *(per curiam))*.

13. Other examples of threats appellate courts have found to be sufficiently particularly directed enough are numerous. The Fifth Circuit in *United States v. Perez* stated:

> Neither is Perez saved by the fact that his posts did not name "a particular individual or group of individuals." *Black*, 538 U.S. at 359. The posts described actions that would have placed employees and potential shoppers at two grocery stores at risk. He did not explicitly refer to those groups of individuals, but the definition of true threats, though narrow, cannot depend on so technical a distinction. True threats are unprotected because they have relatively low value and because restricting them "protect[s] individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388 (1992).

43 F.4th 437, 443-444 (5th Cir. 2022)(quotations in original).

In *United States v. Khan*, the Seventh Circuit found that the defendant's threats to injure or kill "college student[s]," "vulnerable individuals," people "walking their dogs," "high net

---

[3] While the Defendant is correct in his assertion that the Supreme Court struck down the Virginia statute in this case, ECF 51 at 15, it did not do so because a statute banning cross burning with the intent to intimidate was invalid, which the Court affirmed, *id.* at 363, but because the Virginia statute in question stated "[a]ny such burning of a cross **shall be prima facie evidence** of an intent to intimidate a person or group of persons." *Id.*

8

worth individual[s]," and "witnesses" that "get [in] the way" was sufficient proof to support his Section 875(c) conviction without any further defining the groups of individuals. 937 F.3d 1042, 1049-1050 (7th Cir. 2019).

The Third Circuit held that the defendant's posting the coordinates for FBI headquarters in Washington along with comment "the zero hour is approaching" that did not include the identity of a natural person constituted a true threat against a group of individuals--all FBI agents at that building--under Section 875(c) citing *Black*. *United States v. Miah*, 120 F.4th 99, 107-108 (3rd Cir. 2024); *see also United States v. Davitashvili*, 97 F.4th 104, 109-110 (3rd Cir. 2024) (unnamed group of coworkers subject of threat sufficient for Section 875(c) conviction).

In *United States v. Stevens,* the Tenth Circuit found that the defendant's targeted messages of deadly action at Tulsa Police Department officers generally was sufficiently particularized to support the jury's Section 875(c) conviction. 881 F.3d 1249, 1255 (10th Cir. 2018). Stevens' threat against all Tulsa police officers and their families encompassed all of Tulsa and presumably anywhere Stevens found his potential victims.

In *United States v. Martinez*, the Eleventh Circuit affirmed the defendant's conviction for Section 875(c) based on his threat to go to a government building in the county, "maybe a post office, maybe even a school" and "teach all the government hacks working there what the 2nd amendment is all about." 736 F.3d 981, 983(11th Cir. 2013).

Thus, the Defendant's threats to attack Christians. a Christian concert, and any "authorities" who "might want to arrest me" are sufficiently direct as to constitute true threats.

14. To prove a violation of Title 18, United Staes Code, Section 875(c), according to the Fifth Circuit Pattern Jury Instruction, 2.39, as modified by the recent Supreme Court decision in *Counterman v. Colorado*, the Government submits the jury should be instructed that:

Title 18, United States Code, Section 875(c), makes it a crime for anyone to send or transmit any threat to injure the person of another in interstate or foreign commerce.

For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

*First*: That the defendant knowingly sent or transmitted a communication;

*Second:* the communication contained a threat to injure the person of another, as charged;

*Third*: That the defendant sent or transmitted that communication for the purpose of issuing a threat or with knowledge the communication will be viewed as a threat or recklessly disregarding a substantial risk that his communication would be understood as a threat;[4] and

*Fourth*: That the communication was sent in interstate commerce.

A "threat" is a serious statement expressing an intent to injure any person, which under the circumstances would cause apprehension in a reasonable person, as distinguished from mere idle or careless talk, exaggeration, or something said in a joking manner.[5]

Fifth Circuit Pattern Instruction-Criminal (2024), 2.39 as modified.

A person acts recklessly, when he "consciously disregarded a substantial risk that his communications would be viewed as threatening violence."

The indictment clearly alleges the necessary fact to meet each and every element of Title 18, United States Code, Section 875(c).

    A.    **<u>Defendant Made True Threats</u>**

15.    Defendant's claim that because Roblox can be and is used for gaming,[6] does not negate the fact that the Defendant used Roblox and Discord to communicate with like-minded

---

[4] *Counterman v. Colorado*, 600 U.S. 66, 69 (2023); *Elonis v. United* States, 575 U.S. 723, 737, 740 (2015); *United States v. Knight*, 2024 WL 909586, *1-*2 (5th Cir. Mar.4, 2024).
[5] *Virginia v. Black,* 538 U.S. 343, 359 (2003); *Watts v. United States,* 394 U.S. 705, 708 (1969).
[6] ECF No. 51 at 1-3.

10

individuals to discuss the Defendant's plan to carry out an attack against Christians and a Christian concert on three separate occasions using two different screen names. There is no "avatar" exception to the First Amendment prohibition of making true threats. The fact the Defendant used Lego-style avatars to remain anonymous to communicate on these platforms does nothing to negate his true threats directed to Christians and a Christian concert and the Defendant's intent to make such threats. To the contrary, the use of avatars and multiple made-up screen names was clearly used to hide the Defendant's and his cohorts' identities.

16. Two experienced gamers, who observed the Defendant make similar threats on two different days using two different aliases took the Defendant's comments to be true threats rather than role-playing or trolling. These two witnesses took the Defendant's threats so seriously that they contacted the FBI to prevent what they believed to be attack plans against the Defendant's targeted group in April: Christians at a Christian concert. Contrary to the Defendant's argument, there is nothing to indicate on either of those days that the Defendant and his cohorts were using Roblox and Discord to play games, but rather they were just using these platforms solely as communication devices. All three of these conversations happened in interstate and foreign commerce. The fact that these witnesses reported the Defendant's threats to attack scores of innocent people and thus prevented a potential attack, does not detract from the very real threats the Defendant made in January 2025.

17. Given the surrounding circumstantial evidence, including (1) his Google searches for terms such as: "lone wolf terrorist isis," "Festivals happening near me," suicide attacks, firearm ammunition, "most effective knife type," "what is punishment for the one who insults allah or his messenger," along with his stated desire (2) to emulate a knife attack like an online friend did in Europe, (3) the Defendant's distribution of bombmaking instructions to someone in

11

Russia, (4) his researching bombmaking plans while in State custody, amongst other actions, there is no doubt the Defendant made these threats in his desire to carry out these attacks and achieve martyrdom, for the purpose of issuing a threat, with knowledge the communication will be viewed as a threat, or recklessly disregarding a substantial risk that his communication would be understood as a threat. The Defendant's family was so concerned by the Defendant's online activity that his uncle put a keylogger on the family computer to track the Defendant's behavior and took the additional step of the uncle removing all firearms from the house and securing them elsewhere.

18. Certainly, the Defendant can propose his theory to the jury that the Defendant was just playing a game and his multiple statements were not true threats. However, it is up to the jury in judging the facts and applying the Court's instruction to make the determination whether the Government has met its burden to prove the Defendant guilty beyond a reasonable doubt. Contrary to the Defendant's argument, there is no "avatar" exception to the lack of First Amendment protection for the Defendant making multiple true threats. The Defendant's Motion to Dismiss the indictment based on his statements were "made in the context of playing a virtual character in a video game" is without merit and should be denied.

B. **Title 18, United States Code, Section 875(c) Is Not Void for Vagueness**

19. Contrary to the Defendant's argument, Section 875(c) clearly puts an individual on notice that it is illegal for anyone to transmit threats in interstate or foreign commerce to injure the person of another. As set forth in the proposed jury instruction, *supra* at 9, the statute prohibits the Defendant from (1) knowingly (2) transmitting a true threat with (3) the subjective intent to purposely issue a threat, with knowledge the communication will be viewed as a threat, or recklessly disregarding a substantial risk that his communication would be understood as a

threat, (4) in interstate or foreign commerce. Fifth Circuit Pattern Instruction-Criminal (2024), 2.39 as modified by *Counterman v. Colorado*, 600 U.S. 66, 69 (2023).

20. In *Counterman,* the Supreme Court again determined that the First Amendment does not protect a speaker making true threats. *Id.* at 77-78. In *Counterman,* to separate protected speech under the First Amendment with unprotected speech relating to objective requirement of a true threat, the Court add a further element to be proved: the Government must show that the speaker had the subjective intent when making the threat to purposely intend his words to be taken as a threat, to knowing others will take his words to be a threat, or to act recklessly by disregarding a substantial risk his words will be viewed as a threat. *Id.* at 70. With the addition of the subjective intent element as set forth in the Government's proposed jury instruction, even Justice Sotomayor's vagueness concerns were alleviated. *Id.* at 100-101 (Sotomayar, J., concurring).

21. The Third Circuit recently held, post-*Counterman,* that the Defendant's vagueness challenge against a Section 875(c) prosecution failed. *United States v. Miah*, 120 F.4th 99, 108 (3d Cir. 2024). The Third Circuit held that a conviction under 18 U.S.C. § 875(c) requires proof of both a subjective and an objective component; the subjective component is satisfied if the defendant transmitted a communication for the purpose of issuing a threat or with the knowledge it would be viewed as one. *Id. (citing United States v. Elonis*, 841 F.3d 589, 596 (3d Cir. 2016)). This subjective component alleviates concerns that "a defendant will be convicted for an action that he or she committed by mistake." *Id. (citing United States v. Fullmer*, 584 F.3d 132, 152 (3d Cir. 2009)).

22. As the Ninth Circuit found,

> A conviction under § 875(c) requires the specific intent to threaten, *United States v. Twine,* 853 F.2d 676, 680 (9th Cir.1988), and only true threats may be prohibited, *see Virginia v. Black,* 538 U.S. 343, 359–60, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003). Defendant argues that § 875(c) is void for vagueness because the statute itself neither requires specific intent nor defines true threats. However, rather than making the statute void for vagueness, the narrowing construction provided by the relevant cases actually alleviates possible void-for-vagueness concerns. *See Boos v. Barry,* 485 U.S. 312, 329–30, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988). Furthermore, we are convinced that the statute is not impermissibly vague. An ordinary citizen can understand what is meant by the terms "threat to kidnap" and "threat to injure," and we are persuaded that the statute provides sufficient standards to allow enforcement in a non-arbitrary manner.

*United States v. Sutcliffe*, 505 F.3d 944, 953–54 (9th Cir. 2007).

23. Defendant argues that his speech was not a threat and "over-criminalization will fall hardest on certain groups, 'including religious and cultural minorities.'" ECF No. 51 at 21. Defendant argues that "racial and cultural stereotypes can influence whether speech is perceived as dangerous." However, that clearly is not the case here. The witnesses were Muslims like the Defendant. The witnesses did not personally know the Defendant. The witnesses saw the Defendant's similar words on different days. The witnesses were experienced in Discord and Roblox and were adept at distinguishing between role-playing and trolling, and determined that the Defendant's threats were so serious, that they admirably did their civic duty and reported the Defendant's threats to the FBI so as to prevent the Defendant from carrying out his threats.

24. Section 875(c) is not constitutionally overbroad or vague. The statute protects the public from individuals like the Defendant who knowingly make true threats with the intent to make a threat, knowing his comments will be taken to be a threat, or recklessly disregarding his words will be taken as a threat. The First Amendment does not protect the Defendant when he knowingly makes true threats. There is no First Amendment "avatar" exception to making true threats. Making threats to slaughter Christians at a Christian concert and become a martyr a

crime in no way infringes on any protected speech. Merely because the Defendant chooses a large venue to murder innocents does not negate that he chose to target a particular group of individuals. The Defendant's Motion to Dismiss the Superseding Indictment based on First Amendment speech or Fifth Amendment Due Process vagueness grounds is meritless and should be denied.

## Conclusion

WHEREFORE, the Indictment clearly sets forth the facts that if they are believed by the jury are sufficient to convict the Defendant of each and every element beyond a reasonable doubt. The United States respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss Indictment for the reasons set forth above.

Respectfully submitted,

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

  /s/
MARK T. ROOMBERG
Texas Bar No. 24062266
KEITH HENNEKE
Texas Bar No. 24054497
Assistant United States Attorneys
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7100

## CERTIFICATE OF SERVICE

      I hereby certify that on the 13th day of November 2025, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System that will transmit notification of such filing to the following CM/ECF participant:

Jose Gonzalez-Falla
Charly Herring
Attorneys for Defendant

                                              /s/
                              MARK T. ROOMBERG
                              Assistant United States Attorney

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | )   No.  1:25-CR-00332-ADA |
| | ) |
| **JAMES WESLEY BURGER** | ) |

### O R D E R

This matter having come before the Court on the Defendant's Motion to Dismiss Indictment, and the Court having received the Government's Response thereto, and the Court being otherwise fully advised in the premises,

IT IS HEREBY ORDERED that, for the reasons set forth in the Government's Response, the Defendant's Motion to Dismiss Indictment be in all things DENIED.

IT IS SO ORDERED.

SIGNED and ENTERED this _____ day of _____ 2025, Austin, Texas.

_____
HONORABLE ALAN D. ALBRIGHT
United States District Judge