UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § § | CAUSE NO. AU-25-CR-332-ADA |
| JAMES WESLEY BURGER | § § § | |

**DEFENDANT JAMES BURGER'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION TO DISMISS**

Mr. Burger respectfully submits this reply to the Government's response (ECF No. 59) to his Motion to Dismiss (ECF No. 53):

**I.    Introduction**

The cases relied upon by the Government fail to address the imaginary, non-serious gaming context, in which the threats were made. The Government's prosecution of Mr. Burger lacks precedent. No cases the Government cites support a criminal interpretation of Mr. Burger's unfocused, vague, and role-playing, online speech. Moreover, an imaginary victim, as the one here, can never be the victim of a true threat.

Left without jurisprudence, the Government creates its own. Its response conceals the context in which courts have found threats to be true. The response also misrepresents important factual details necessary to the true threat findings. Each case will be addressed here in the order it appears in the response.

## II.     The Government's Inapt Authorities

The Government begins with *Virginia v. Black,* 538 U.S. 343 (2003).[1] In *Black*, the Supreme Court found that a ban on cross burning carried out with an intent to intimidate to be fully consistent with the Court's First Amendment jurisprudence. But intent could not be presumed from the mere act of burning the cross itself, as the Virginia statute at issue allowed. Intent to intimidate still needed to be shown with specific facts to pass First Amendment scrutiny. Here, Burger maintains that the vague and unfocused remarks he made while playing Church are insufficient as a matter of law to qualify as a true threat because they fail to show objectively that the threat was serious and intended to intimidate a real live person. *Black* supports Burger. It confirms that the First Amendment requires proof of an intent to threaten a real person.

The Government cites *United States v. Morales,* 272 F.3d 284 (5th Cir. 2001) for the proposition that the intended target of a threat need not be aware of the threat.[2] Burger agrees that this is a correct statement of the law. But *Morales* involved a real, identifiable victim. The defendant in *Morales* entered an internet chatroom and in a conversation with a stranger in Washington, threatened to shoot and kill teachers and students at Milby High School. The stranger alerted police because she was concerned about Milby High students. The principle was also notified at the high school, and increased security measures were taken. Burger threatened no real, identifiable victim.

The Government turns next to *United States v. Perez,* 43 F.4th 437 (5th Cir. 2022). It stands for the proposition that one need not refer to a specific individual for the threat to be real.[3] This is also true, but there still must be a real and identifiable group of specific individuals for the threat

---

[1] ECF No. 59, p. 7.
[2] ECF No. 59, p. 8.
[3] Government Response, ECF No. 59, p. 8,

to be credible. The victims in *Perez* were, in fact, real - two HEB stores in San Antonio. The defendant posted on Facebook that products in the two grocery stores (identified by street location) had been licked by a person who tested positive for Covid-19. *Id.* at 440. In response, HEB tasked four employees to search through thousands of transactions to see if two individuals identified by the defendant had made purchases at either store. *Id.* Here, no one took protective measures against the threats Burger posted. Doing so would have been absurd. There was no identifiable victim to protect.

The Government offers *United States v. Khan*, 937 F.3d 1042 (7th Cir. 2019) to support its argument.[4] It uses *Khan* for the proposition that classes of victims, instead of specific individuals, may suffice for threats to be real. This is also true, but once again, facts underlying the opinion betray the Government's reliance upon it. Details about the defendant and his targets gave the specificity required to make the threat real. Khan was a Chicago Uber driver. Over a seven week span he used Facebook to post messages threatening to "kill," "shoot," "hunt," "murder," and "put bullets in" his "targets." *Id.* at 1046. He identified a number of "targets," including "college student[s]," "vulnerable victims," people "walking their dogs," and "claimed the loop area of Chicago to the Northern Lincoln Park area" as his "free kill zone." *Id.* Khan posted that he planned to "purchase a [G]o [P]ro camera, strap it to [his] chest or forehead, record the killings, and upload them onto Facebook for everyone around the world to see the grisly footage of death." *Id.* He posted about "dry runs" and carrying a loaded gun during his shifts to prepare for the "necessary murders." *Id.* Many of the Facebook posts occurred immediately before and after picking up passengers. He broadcasted this. The defendant's identification of specific target groups, in a defined area of Chicago, with corroborating visual proof, made the threats criminal. *Id.* at 1052.

---

[4] ECF No. 59, p. 8.

The true threats in *United States v. Miah,* 120 F.4th 99 (3rd Cir. 2024) also took place in a real-world context.[5] Miah was questioned by an FBI agent, became enraged, then retaliated. He created a Twitter account and posted personal information and photographs of the FBI agent's wife. *Id.* at 105. After the FBI executed a search warrant at his home, Miah created a second Twitter account from which he made threats against the FBI agents. Over several days, he tweeted the names of the FBI agents, reporting "the deed will be done at a time which is the most opportunistic for me, chosen by myself." *Id.* at 106. Miah tweeted that he was "eating pasta and watching videos of the second plane hit the south tower." *Id.* He tweeted that "the zero hour is approaching." *Id.* He tweeted the GPS coordinates of the FBI headquarters in Washington D.C. *Id.* He tweeted their names again and asked how the investigation was going, stating "the hardwood floor will collapse beneath your feet." *Id.* The threatening tweets ended with "Remember boys, the more eyes on me, the less eyes on others. Regardless, yellow tapes will flow." *Id.* The *Miah* court found that the specificity of these threats and their retaliatory nature showed them to be "true threats under First Amendment jurisprudence." *Id.* at 108. Here, there is no specificity or retaliatory motive that gives life to the threats. The threats live and die in a virtual world.

The Government next invokes *United States v. Davitashvili,* 97 F.4th 104, 109-110 (3rd Cir. 2024), and distorts what it teaches.[6] *Davitashvili* did not, as the Government says, find that a threat targeting an "unnamed group of coworkers" sufficed to support a § 875 (c) conviction. The coworkers, the *Davitashvili* court wrote, were "particular people, at least one of whom was named." *Id.* at 110. One coworker in the threat was named "Pele." The primary target of the threats, the defendant's ex-wife, testified she knew "Pele." *Id.* She also testified that in phone

---

[5] ECF No. 59, p. 9.
[6] ECF No. 59, p. 9.

conversations, the defendant "gave some names" of the five to fifteen people he intended to kill." *Id.* The context allowed the jury to conclude that the targets were real people and actual acquaintances of the couple. *Id.* This allowed the jury to find that the defendant was threatening violence against a particular group of individuals. *Id.* No such individual, or group of individuals, were threatened by Burger.

With *United States v. Stevens,* 881 F.3d 1249 (10th Cir. 2018), the Government again misleads.[7] The *Stevens* court *did not* find that "messages of deadly action at Tulsa Police Department officers generally was sufficiently particularized to support" the § 875 (c) conviction.[8] *Stevens* found instead that the defendant "targeted particular individuals in five of his 10 messages…" *Id.* at p. 1254. These included Tulsa police officer Betty Shelby, former Tulsa police chief Roy Palmer, and the then acting Tulsa police chief. *Id.* pp. 1254-1255. The defendant also threatened the Tulsa County District Attorney and the Tulsa County Magistrate Judge. *Id.* p. 1255, fn. 5. The officers Stevens threatened were alive, had names, and had families. The Government ignores and conceals this important fact.

Finally, the Government tells the Court to rely on *United States v. Martinez,* 736 F.3d 981, 983 (11th Cir. 2013) to deny Burger's Motion to Dismiss.[9] But *Martinez* has no precedential value. The opinion in *Martinez* was vacated after the Supreme Court granted certiorari and remanded it for further consideration after *Elonis v. United States,* 135 S. Ct. 2798 (2015). On remand, the Eleventh Circuit found the indictment to be insufficient because it failed to allege Martinez's *mens rea* or facts from which it could be inferred. *United States v. Martinez,* 800 F.3d 1293 (11th Cir.

---

[7] ECF No. 59, p. 9.
[8] ECF No. 59, p. 9.
[9] ECF No. 59, p. 9.

2015). *Martinez* does not support the Government's prosecution of Burger's online speech. The Government Response fails to identify any precedent for its indictment of Burger.

### III. Bad Acts Do Not Make the Threat Credible

To distract the Court from the non-serious context of the threats, the Government writes that Burger engaged in other bad acts that show he intended to make an online threat.[10] But no matter how troubling and distasteful Burger's past actions may appear, in this case Burger never made an online threat against an identifiable person that was to occur in an identifiable place or at an identifiable time. The fanciful nature of the threat, and the gaming context in which it occurred, remains the same. Burger's curiosity about Muslim extremists and foreign terrorist organizations does nothing to change this. Neither does his search history, or his adolescent attraction to the idea of martyrdom, or to the possession of firearms. To the extent any bad act evidence may be admissible, it does nothing to clarify the meaning of the words Crazz3pain and Ghurabaah spoke while playing with others in the Church experience on Roblox, nor does it add weight to the non-serious context of the statements.

### IV. Conclusion

There was no truth to the threats Burger made. They were made by virtual characters in conversations with other virtual characters playing an online game in a virtual space. The threat targeted no identifiable living victim. The threat never identified a place where it was to occur. No victim experienced fear. No victim sought or needed protection. Authorities could take no protective action to mitigate the threat because the threat was not real. True threats require true victims, whether identified with specificity or not. Otherwise, the threat cannot rationally be viewed as a true threat. The First Amendment protects against this type of prosecution.

---

[10] ECG No. 59, pp. 4-7. Burger will challenge the admissibility of much of the Government's 404(b) proffer by separate reply.

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

_____
/s/ JOSE I. GONZALEZ-FALLA
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
Bar Number: Texas 08135700


_____
/s/ CHARLOTTE A. HERRING
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
TX Bar Number: 24064026

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 17th day of November 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mark Roomberg
Keith Henneke
United States Attorney's Office
903 San Jacinto Blvd., Suite 334
Austin, TX 78701

                                                            /s/ JOSE I. GONZALEZ-FALLA