**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § | |
| **V.** | § § | NO.    A-25-CR-00332 (ADA) |
| **JAMES WESLEY BURGER** | § § | |

**DEFENDANT JAMES BURGER'S RESPONSE TO THE GOVERNMENT'S NOTICE PURUSANT TO FEDERAL RULE OF EVIDENCE 404(b)**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ALAN D. ALBRIGHT:

Mr. Burger, through undersigned counsel, respectfully submits this response to the Government's Amended Notice Pursuant to Federal Rule of Evidence 404(b). ECF Doc. No. 58.

**I.     Legal Framework**

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Rule 404(b) "follows the venerable principle that evidence of extrinsic offenses should not be admitted solely to demonstrate the defendant's bad character." *United States v. Beechum*, 582 F.2d 898, 910 (5th Cir. 1978) (en banc) (noting that such evidence, even if relevant, is "inherently prejudicial"). "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(b).  This rule "guard[s] against the inherent danger that the admission of 'other acts' evidence might lead a jury to convict a defendant not of the charged offense, but instead of an extrinsic offense." *United States v. Crawley*, 533 F.3d 349, 353 (5th Cir. 2008) (quotations omitted).

The Fifth Circuit has adopted a two-part test for determining the admissibility of evidence under Rule 404(b). *United States v. Kinchen*, 729 F.3d 466, 471 (5th Cir. 2013). First, the Court must determine if "the extrinsic evidence is relevant to an issue other than the defendant's character." *Beechum*, 582 F.2d at 911; *United States v. Jackson*, 339 F.3d 349, 354 (5th Cir. 2003) ("Evidence in criminal trials must be strictly relevant to the particular offense charged."). Evidence is relevant if it has "any tendency" to make a fact of consequence to determining the action "more or less probable than it would be without the evidence." Fed. R. Evid. 401. Second, "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403." *Beechum*, 582 F.2d at 911. To determine whether undue prejudice substantially outweighs probative value courts should consider: "(1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions." *Kinchen,* 729 F.3d at 473. Finally, the Court must also "consider the overall prejudicial effect of the extrinsic evidence." *United States v. Juarez*, 866 F.3d 622, 627 (5th Cir. 2017).

II.    **The Pending Charges**

The Superseding Indictment charges Mr. Burger with three counts of interstate threatening communication. The indictment charges three statements Mr. Burger is alleged to have made on Roblox on January 21, 23, and 27, 2025. ECF Doc. No. 40.

Count one alleges that Mr. Burger stated he would "deal a grievous wound upon the followers of the Cross[.]" *Id.* at pg. 1. Count two alleges Mr. Burger stated:

> I've come to conclude it will befall the 12 of Shawwal aa/And it will be a music festival/Attracting bounties of Christians s/In'shaa'allah we will attain martyrdom /And deal a grevious wound upon the followers of the Cross /Pray for me and enjoin yourself to martyrdom.

*Id.* at pg. 2. Count three alleges Mr. Burger stated:

> I have guns In[ ]case the authorities want to arrest me…I am ready To sacrifice my life for my Rabb…[I will] Detonate what I've prepared Of munitions And use my firearms To take many with me, [and] Yes wish me luck On the path of martyrdom In'shaa'allah.

*Id.* at pg. 3.

### III.     The government's 404(b) notice

The government provided notice of its intent to offer thirteen categories of evidence. The government first argues that each of these thirteen categories of evidence are intrinsic to the charged offenses because each piece of evidence shows that Mr. Burger "was serious about his threats to attack Christians and a Christian concert[.]" ECF Doc. No. 58 at pg. 2. The government then claims that even if the thirteen categories of evidence are not intrinsic, they are admissible to show Mr. Burger's "knowledge, motive, opportunity, intent, preparation, plan, identity or absence of mistake or accident, and predisposition to commit the charged crimes." *Id.* at pg. 3. The government makes no specific argument as to any piece or category of evidence.[1]

### IV.     Argument

The thirteen categories of evidence can be split into seven groups. First, statements made by Mr. Burger online or in video games. Second, Mr. Burger's online search history. Third, notes Mr. Burger made while in custody. Fourth, photos of Mr. Burger. Fifth, Mr. Burger's conversation with his aunt after his arrest. Sixth, evidence that Mr. Burger's uncle installed a keylogger and

---

[1] Rule 404(b)(3)(B) requires more than just notice of intent to offer evidence. The prosecution also must articulate both (1) the "permissible purpose" for which the evidence will be offered and (2) how the evidence tends to prove that permissible purpose without relying on an inference about the accused's character. *See, e.g., United States v. Abarca*, 61 F.4th 578, 580-81 (8th Cir. 2023) (providing defendant with copy of witness's pretrial interview did not comply with (3)(B) requirement because it provided notice only of general nature of testimony). "The United States bears the burden to articulate the chain of propensity-free inferences for each piece of evidence offered." *United States v. Davitashvili* , 602 F. Supp. 3d 704, 718 (E.D. Pa May 9, 2022). Here, the government has made no attempt to articulate any argument as to how its thirteen pieces of evidence meet a permissible purpose, and its 404(b) notice is insufficient.

removed firearms from the family home. Seventh, the allegations that Mr. Burger attempted to bring a firearm to school.

1. **The Court should exclude evidence of statements made by Mr. Burger online and in video games.**

The government seeks to introduce numerous statements made by Mr. Burger either online or in video games. Specifically, the government seeks to introduce the following statements.

The government first seeks to introduce evidence of statements captured by the keylogger.[2] Specifically, the government seeks to introduce the following statements:

- "I think the Austin Police Department /Would be a good target /Cuz I hate /The police so much /I hate all constitutions and government /Outside of the Sharia /And all laws outside of Sharia /All man-made law is illegitimate" "But yah I would /Definitely kill a lot of cops someday"
- "BAkhi, lets not discuss this here, it is very unsafe And leads to authorities becoming suspect of your actions or intentions ch782848"
- "I've come to conclude it will befall the 12 of Shawwal aa/And it will be a music festival /Attracting bounties of Christians s/In'shaa'allah we willl attain martyrdom /And deal a grevious wound upon the followers of the Cross /Pray for me and enjoin yourself to martyrdom"
- "We're getting our knives sharpened for your throats" "Mock us all you want but the spark has been lit ? The spark of your demise //You're going to kneel / What happens after is of no knowledge to me /D"

As a preliminary matter, the third statement the government includes in its 404(b) notice is the communication that forms the basis of Count Two. Mr. Burger does not object to the introduction of that statement.

The government also seeks to introduce statements regarding how to make a bomb while playing Roblox,[3] statements Mr. Burger made online about wanting to do a stabbing attack,[4] and Mr. Burger's statement on Roblox that "anyone whom leaves his lands…and dies a Shaheed

---

[2] Item 1 in the government's amended notice.
[3] Item 2 in the government's amended notice. Defense counsel is not aware of the source of this statement from discovery and has asked the government to identify the specific item it seeks to introduce on this point.
[4] Item 4 in the government's amended notice.

[martyr] will receive immense rewards… [and] if it became necessary…[he] would sacrifice [himself] in a frenzy 100%," and that "frenzy" meant "in a blaze of iron and metal…raining bullets upon disbelievers and their soldiers/police."[5] The government also seeks to introduce a statement made on March 26, 2024, that his highest ambition was to be a successful serial killer.[6]

Mr. Burger objects to the introduction of all these statements because none of the statements are relevant to any issue other than Mr. Burger's character.

The government first argues that all of these statements are "intrinsic" to the charged offenses. "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990). Many of these statements were made months—as many as seven or eight months—prior to the alleged threats at issue in this case. Prior statements not proximate in time to the charged statements are not part of the criminal episode at issue. Additionally, all statements aside from Item 2 in the government's list are statements that Mr. Burger made in other online spaces, not in the game Roblox. Statements made on different online platforms in different contexts are not intrinsic to the charged statements made in Roblox. Further, the government fails to explain how any of these statements, which do not reference or relate to the purported threat to a Christian concert, are "inextricably intertwined" with the statements charged in the indictment. Essentially, the government argues that every statement Mr. Burger made online or in Roblox is "inextricably intertwined" with the charged conduct. Such an

---

[5] Item 11 in the government's amended notice.
[6] Item 12 in the government's amended notice. Defense counsel is not aware of the source of this statement from discovery and has asked the government to identify the specific item it seeks to introduce on this point.

argument stretches the rule of "intrinsic" evidence too far. Therefore, these statements are not intrinsic to the offense charged.

Because the evidence is extrinsic, the government must show the statements are relevant to an issue other than Mr. Burger's character. *Beechum*, 582 F.2d at 911. The purpose of Rule 404(b) is to "guard against the inherent danger that the admission of 'other acts' evidence might lead a jury to convict a defendant not of the charged offense, but instead of an extrinsic offense." *United States v. Sumlin,* 489 F.3d 683, 689 (5th Cir.2007). As is evident from the number of statements the government seeks to introduce, the government is simply attempting to introduce any and every statement made by Mr. Burger it deems upsetting or frightening. They seek to introduce these statements without ever showing how a particular statement is relevant to one of the permissible uses in Rule 404(b). As Justice Sotomayor recognized in her concurrence in *Counterman v. Colorado*, the burdens of over-criminalization of speech will fall hardest on certain groups, "including religious and cultural minorities," whose language can be "more susceptible to being misinterpreted by outsiders. And unfortunately yet predictably, racial and cultural stereotypes can also influence whether speech is perceived as dangerous." 600 U.S. 66, 88-89 (2023) (Sotomayor, J., concurring).

The government makes no specific argument for any statement, instead listing every permissible purpose included in Rule 404(b), and merely states that every item listed in their notice shows Mr. Burger's "knowledge, motive, opportunity, intent, preparation, plan, identity or absence of mistake or accident[.]" ECF Doc. No. 58 at pg. 3. These statements, however, are not relevant to any of the listed permissible purposes. For example, while intent may be at issue in the trial, the government fails to show how the proffered statements would establish that Mr. Burger intended the charged statements concerning the Christian concert to be serious expressions that he intended

to commit an act of unlawful violence. Rather, these prior statements are classic propensity evidence. Their relevance rests solely on an argument that he made seemingly threatening statements in the past, so he must have intended the charged statements to be threats.

In fact, the government seemingly recognizes that its proffered evidence is character evidence. The government lists as one of the purposes of the evidence is to show Mr. Burger's "predisposition to commit the charged crimes." ECF Doc. No. 58 at pg. 3.[7] This is undisguised argument that the evidence shows Mr. Burger's character. But evidence of a person's bad character is explicitly prohibited because it is inherently prejudicial. *Beechum*, 582 F.2d at 910. "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(b). Therefore, the government has not established that the extrinsic evidence is relevant to an issue other than Mr. Burger's character, and the statements are inadmissible.

Other courts have excluded other, unrelated threatening statements under Rule 404(b) in prosecutions for violating 18 U.S.C. § 875(c). *See United States v. Abbott*, No. 24-CR-20098, 2025 WL 1445720 (S.D. Fla. May 20, 2025). In *Abbott*, the government sought to introduce evidence that two weeks after the charged threats to shoot the police took place, the defendant's wife "called 911 and reported that her husband had threatened to kill her, her family and then himself." *Id.* at *2. The government argued that it was evidence of intent and knowledge, showing the defendant "knew that when he threatened to shoot the officers, it would be construed as a threat, just as it was when he threatened to kill his wife" or that the evidence was intrinsic because the close-in-time incidents showed how the police interpreted the defendant's threats. *Id.* The Court, however,

---

[7] Evidence of "predisposition" may be relevant in cases where a defendant claims entrapment because it then becomes the government's burden to show predisposition. *See United States v. Cervantes*, 706 F.3d 603, 616 (5th Cir. 2013). Here, Mr. Burger is not arguing he was entrapped, and any argument of that he was predisposed to commit the offense is not relevant.

7

granted the defendant's motion to exclude the evidence, holding that uncharged threatening statements had no bearing on "his intent two weeks prior, when the charged conduct took place." *Id.* at *3. The Court reasoned:

> There is no relationship between the threats Defendant allegedly made to his wife and in-laws and the threats for which he is charged. Instead, as Defendant argues, "the sole purpose of [introducing] the call at trial would be to prove propensity.... [T]he call is being used to invite the inference that if [Defendant] threatened his wife and in-laws on December 31, 2022, he must have meant to threaten cops" when he sent the December 18, 2022 email.

*Id.* The uncharged threats were not intrinsic to the charged offense because they occurred on separate dates and in unrelated contexts. *Id.*

Like the statements at issue in *Abbott*, the sole purpose of introducing these statements at trial is to prove propensity. These statements are being used to invite the inference that if Mr. Burger made statements concerning violence on other occasions, he must have meant to threaten violence in the charged statements.

Second, even if the Court finds that these statements are relevant to a fact of consequence, the government fails to meet *Beechum's* second step. Any probative value is substantially outweighed by its undue prejudice. *Beechum*, 582 F.2d at 911. Any probative value of these statements—which is minimal to start with—would be substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. Introduction of these statements, particularly in light of the great number of statements the government is attempting to introduce, poses a substantial risk of confusing the issues and misleading the jury. Rather than focusing on whether the charged statements are "true threats," as required by the First Amendment, introduction of these extraneous statements risks the jury convicting solely on the basis of emotion and prejudice.

2. **The Court should exclude Mr. Burger's search history.**

The government seeks to introduce select items from Mr. Burger's Google search history, including his search of "lone wolf terrorist isis," "Festivals happening near me," suicide attacks, different types of firearm ammunition, "most effective knife type," and "what is punishment for the one who insults allah or his messenger." The Court should exclude this evidence

The government first argues that every term or phrase Mr. Burger searched online is "intrinsic" to the charged offenses. Notably, the government is cherry-picking a half-dozen searched items from the 6,610 total items that returned as Mr. Burger's searched items.[8] The government fails to explain how any of these statements are "inextricably intertwined" with the statements charged in the indictment. The government's notice does not indicate when, in relation to the alleged threats charged in the indictment, the searches were conducted. Nor does the government's notice indicate what results, if any, the searches returned or if Mr. Burger interacted with any of the results.

Therefore, the search history is extrinsic, and the government must show the statements are relevant to an issue other than Mr. Burger's character. *Beechum*, 582 F.2d at 911. The government fails to make any argument as to how any specific search term is relevant to one of the permissible uses in Rule 404(b). Further, any probative value is substantially outweighed by its undue prejudice and will confuse the jury. *Beechum*, 582 F.2d at 911.

---

[8] Discovery produced by the government notes that a total of 6, 610 items returned as the "searched items" from Mr. Burger's cellphone. The FBI review of the 6,610 items deemed only 76 items "evidentiary." The FBI agents responsible for reviewing all searched items deemed 5,578 items "not relevant to the current investigation." SA-4008696-Unclassified Serial 9. Defense counsel has asked the government to produce the 5,578 searched items deemed not relevant to this case and is awaiting the government's response to this request.

3. **The Court should exclude the excerpts of a popular thriller novel Mr. Burger copied while in custody.**

The government seeks to introduce handwritten notes made by Mr. Burger while in state custody. The government argues that these notes include Mr. Burger's "bombmaking plans."[9] The notes are actually excerpts that Mr. Burger copied almost verbatim from a popular best-selling thriller novel "*In the Blood*" by Jack Carr.[10]

These notes are not "intrinsic" to the charged offenses because they are not "inextricably intertwined" with the charged threats, nor are they "necessary preliminaries" to the crimes charged. *Williams*, 900 F.2d at 825. Mr. Burger's notes were made long after the purported threats occurred and in fact months after he had already been arrested, charged, and was in custody at the Williamson County jail. It is unclear how excerpts Mr. Burger copied from a popular novel available to him in custody can be said to be "inextricably intertwined" with the alleged threats. In order for a communication to be a threat under § 875(c), the Fifth Circuit requires that "in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *United States v. Morales*, 272 F.3d 284, 287 (5th Cir. 2001) (quoting *United States v. Myers,* 104 F.3d 76, 79 (5th Cir.1997)). But Mr. Burger's notes were made long after the purported threats, and they cannot be said to address the "context" in which the purported threats were made. Nor can the notes be said to be a "necessary preliminary" to the crime charged. Thus, Mr. Burger's handwritten copy of a passage from a thriller novel is not intrinsic to the charged offenses.

---

[9] The government advised defense counsel that it intends to notice as an expert an FBI Explosives Forensic Examiner who reviewed Mr. Burger's handwritten notes and concluded that the notes "are instructions to assemble components of a potentially viable IED."

[10] In the Blood is a 2022 thriller novel by New York Times bestselling author Jack Carr, and is the fifth book in his Terminal List series, which follows former Navy SEAL James Reece on a global hunt for a master sniper.

Because the evidence is extrinsic, the government must show the notes are relevant to an issue other than Mr. Burger's character. *Beechum*, 582 F.2d at 911. The government has not identified a permissible purpose for this evidence. Nor is there a permissible purpose for the notes. Mr. Burger was already in custody when he copied from the novel. Further, while Mr. Burger's intent is at issue, the government fails to show how a passage copied from a novel *after* his arrest is evidence of his intent to communicate a true threat in the statements charged in the indictment. Rather, these statements are classic character evidence—the only possible inference the jury can make is that because Mr. Burger expressed an interest in a violent passage from a novel, he must also have meant to express an intent to commit an unlawful act of violence when he communicated the messages contained in the indictment, months prior.

4. **The Court should exclude the photos of Mr. Burger with firearms.**

The government notices its intent to introduce photos Mr. Burger posted of himself holding firearms. The government again claims, without explanation, that the photos are intrinsic to the charged offense. In discovery the government has provided two photos of Mr. Burger holding a firearm. The first was originally taken on June 17, 2024, and depicts Mr. Burger holding a hunting rifle. The image seems to have been modified on December 27, 2024, by blurring out his face. The second picture is of Mr. Burger holding a handgun and pointing it towards a friend, which was taken on September 23, 2024.

These photos are not intrinsic to the offense. The photos were taken months before the alleged threats contained in the indictment. Furthermore, as the government recognizes in its 404(b) notice, all the firearms were removed from Mr. Burger's home *before* he made the statements alleged in the indictment. Photos of Mr. Burger with firearms he did not have access to on the date he made the purported threats cannot be said to be intrinsic to the offense charged.

Nor are the photos relevant to an issue other than Mr. Burger's character. Again, the government fails to explain how photos of firearms Mr. Burger *did not have access to* when the purported threats were made are relevant to show his knowledge, motive, opportunity, intent, preparation, plan, identity or absence of mistake or accident. Finally, any probative value is substantially outweighed by its undue prejudice and would confuse the issue before the jury. *Beechum*, 582 F.2d at 911.

5. **The Court should exclude Mr. Burger's conversation with his aunt.**

The government also notices its intent to introduce evidence of a conversation between Mr. Burger and his aunt that occurred after Mr. Burger had already been arrested and charged. The government seeks to introduce a conversation where Mr. Burger's aunt had asked him hypothetically, if she had said something against Mohammad would Mr. Burger harm her, and he responded that it would be a "redline" for him. The government's notice asserts that Mr. Burger's aunt understood this response to mean the answer to her question was "yes."

The government first argues the conversation is intrinsic to the charged offenses, but the conversation is not "inextricably intertwined" with the charged threats, nor is it a necessary preliminary to the crimes charged. *Williams*, 900 F.2d at 825. The government makes no argument as to how a conversation that occurred months after the charged conduct, and after Mr. Burger was already arrested, is intrinsic to the charged offense.

Nor does the government identify any proper purpose for this extrinsic evidence. Because the evidence is extrinsic, the government must show the statements are relevant to an issue other than Mr. Burger's character. *Beechum*, 582 F.2d at 911. The government has not, and cannot, identify how this conversation tends to prove any permissible purpose without relying on an

inference about Mr. Burger's character. Instead, the government seeks to invoke cultural and religious stereotypes about what Mr. Burger meant by his use of the word "redline."

Finally, even if the Court finds Mr. Burger's statement that it would be a "redline" for his aunt to say something against Mohammad is relevant to a fact in issue, any probative value is substantially outweighed by the danger of unfair prejudice. The conversation about Mr. Burger's religion seeks only to inflame the jury and risks the jury deciding the case based on emotion and prejudice against Mr. Burger's religion.

6. **The Court should exclude evidence of Mr. Burger's uncle installing a keylogger on the family computer and moving his firearms out of the home.**

The government notices its intent to introduce evidence that Mr. Burger's uncle, Jim Best, put a keylogger on the family computer and removed firearms from the family home. Mr. Burger has no objection to the introduction of evidence of the keylogger or that the firearms were removed from the home.

7. **The Court should exclude the alleged "propaganda" Mr. Burger sent online.**

The government notices its intent to introduce evidence of "Islamic State propaganda" that Mr. Burger shared online. ECF Doc. No. 58 at pg. 3. The government fails, however, to identify this "propaganda," except to say it included beheading videos. *Id.* The government also fails to identify when this information was allegedly sent or to whom it was sent.

The government's notice for this alleged "propaganda" suffers from the same flaw as the government's notice for Mr. Burger's Google search history. The government first argues that the messages Mr. Burger sent are "intrinsic" to the charged offenses. But again, the government fails to explain how any "propaganda" is "inextricably intertwined" with the statements charged in the indictment. The government fails to even describe, let alone identify, the content of the messages

13

they claim to be "Islamic State propaganda." Nor does the government's notice indicate when, in relation to the alleged threats charged in the indictment, the messages were sent or the recipient.

The purported "propaganda" is, therefore, extrinsic, and the government must show the statements are relevant to an issue other than Mr. Burger's character. *Beechum*, 582 F.2d at 911. The government fails to make any argument as to how any of these messages are relevant to one of the permissible uses in Rule 404(b). Further, any probative value is substantially outweighed by its undue prejudice and seeks only to inflame the jury. *Beechum*, 582 F.2d at 911.

8. **The Court should exclude evidence that Mr. Burger attempted to bring a firearm to school because it is not true, not intrinsic, and amounts to nothing more than character evidence.**

Finally, the government seeks to introduce testimony that once (allegedly several years ago) when Mr. Burger's grandmother was taking him to school, he brought a gun into the car with the intent of bringing it to school.[11] As a preliminary matter, there is no evidence that this incident ever occurred. At a minimum, extrinsic act evidence can "be relevant only if the act was in fact committed and only if the defendant in fact committed it." *United States v. Guerrero*, 650 F.2d 728, 733 (5th Cir. 1981).

Even if the Court finds that this occurred, it is not relevant to any fact of consequence in this case. The government fails to articulate how Mr. Burger having access to a firearm, years prior to the offenses charged in this case while he was living in a different city with different family members, is relevant to his motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Second, any probative value of these statements would be substantially outweighed by the danger of unfair prejudice, confusing the issue, and misleading the jury.

---

[11] Mr. Burger does not concede this in fact occurred. Defense counsel understands it never occurred and the government's source for the allegation was relaying (and misstating) hearsay.

V.   **Conclusion**

The government seeks to introduce numerous pieces of evidence of offenses extrinsic to the crimes charged. Given the sheer number of extraneous offenses the government wants to introduce, the trial will be so dominated by these uncharged acts that any probative value of the individual uncharged acts will be substantially outweighed by the prejudicial effect of having a trial primarily focused on uncharged conduct. *See United States v. Fortenberry*, 860 F.2d 628, 632 (5th Cir. 1988). In *Fortenberry*, the defendant was charged with placing a small device in an unoccupied car, one that did little damage to the car, but the jury also heard extensive testimony concerning three attacks with crossbow arrows, one of which nearly struck a two-year old child; three incidents of arson accounting for thousands of dollars in damage; and an act of vandalism with a .22 caliber rifle. *Id.*

Just as in *Fortenberry*, the government seeks to dominate the trial not with evidence of the charged offenses, but with evidence of extrinsic offenses. The evidence of the uncharged conduct will overwhelm the evidence of the charged conduct. Even if some of the uncharged conduct has some probative value, the volume of the 404(b) will overwhelm the charged conduct, and will, in effect, result in numerous "mini-trials" surrounding the uncharged acts. As the Fifth Circuit observed in *Fortenberry* "[i]n terms of both time in the courtroom and capacity to impress the jury, this tail wagged the dog." *Id*. at 631. Thus, any probative value of the uncharged acts is substantially outweighed by their prejudicial effect.

The prejudicial effect of this other act evidence is compounded by the fact that the majority of the evidence the government seeks to introduce under Rule 404(b) occurred while Mr. Burger was still a juvenile. Mr. Burger did not turn eighteen years old until October 31, 2024, well after many of the acts in the government's notice occurred. Any probative value of comments made

online or in video games while he was still a child is substantially outweighed by their prejudicial effect.

                Respectfully submitted,

                MAUREEN SCOTT FRANCO
                Federal Public Defender

                _____
                /s/ JOSE I. GONZALEZ-FALLA
                Assistant Federal Public Defender
                Western District of Texas
                Lavaca Plaza
                504 Lavaca St., Ste. 960
                Austin, Texas 78701
                (512) 916-5025
                (512) 916-5035 (FAX)
                Bar Number: Texas 08135700

                _____
                /s/ CHARLOTTE A. HERRING
                Assistant Federal Public Defender
                Western District of Texas
                Lavaca Plaza
                504 Lavaca St., Ste. 960
                Austin, Texas 78701
                (512) 916-5025
                (512) 916-5035 (FAX)
                TX Bar Number: 24064026

                *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of November 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mark Roomberg
Keith Henneke
United States Attorney's Office
903 San Jacinto Blvd., Suite 334
Austin, TX 78701

                                                                           _____
/s/ CHARLOTTE A. HERRING