IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | No.  1:25-CR-00332-ADA |
| ) | |
| JAMES WESLEY BURGER   ) | |

**GOVERNMENT'S BRIEF IN SUPPORT OF ITS MOTION TO STAY ORDER DISMISSING SUPERSEDING INDICTMENT AND RELEASE PENDING APPEAL**

COMES NOW, the United States of America, by and through its undersigned attorneys, and hereby files its Brief in Support of its Motion to Stay Order Dismissing Superseding Indictment and Release Pending Appeal. Following the Court's oral pronouncement of its decision to dismiss the Superseding Indictment against Defendant James Burger, the government requests that the Court issue a written opinion explaining the Court's reasoning for that decision and stay that decision pending appeal or for at least 7 days after the Court issues a written order dismissing the indictment to allow time for the Solicitor General to consider whether to appeal this Court's decision to the Fifth Circuit Court of Appeals and, if the decision is made to appeal, to give the government time to file that appeal and request a stay of the Court's order from the Fifth Circuit.

**I.        Relevant Facts and Procedural History**

This case arises from threats Burger, then a high school senior near Austin, Texas, issued in an online platform called Roblox. Roblox allows users to create online environments called "experiences"—often games, but sometimes more akin to chatrooms—that they and other users can populate through online avatars. Burger issued his threats using avatars "Ghurabahh" and "Crazz3pain" in a Roblox environment called "Church." Other users reported some of Burger's threats, which they saw as a series of transient messages that appeared above their heads for ten

seconds, then disappeared. Law enforcement captured others through a keystroke logger his uncle installed on the computer Burger used after becoming concerned about Burger's behavior. On January 21, 2025, Burger made statements on Roblox about having guns and explosives and being prepared to use them to kill law enforcement and achieve martyrdom if the authorities try to arrest him. On January 23 and 27, 2025, Burger made statements on Roblox indicating that he was planning to attack a Christian music concert or festival, kill or injure the Christians, and seek or achieve martyrdom.

Burger was arrested on state charges on February 28, 2025. On May 19, 2025, Burger was transferred into federal custody pursuant to a federal complaint. ECF 1. The government sought pretrial detention of Burger because of the risk he would flee and because of the danger he presented to the community. Mot. to Detain, ECF 3. After a contested hearing, the Honorable U.S. Magistrate Judge Mark Lane granted the government's motion to detain Burger, finding that no condition or combination of conditions of release would assure his appearance or assure the safety of any other person and the community. Order of Detention, ECF 10. Evidence of Burger's danger to the community included his threats described above, the fact that he stated a particular date for his planned attack on a Christian concert, "the 12 of Shawwal," which meant April 12, 2025, and the fact that there was a prominent Christian concert scheduled for April 12, 2025 in Austin, Texas. Before and after January 27, 2025, Burger visited the website for LiveNation, the company promoting that concert. And at some point, Burger searched on his phone for "Festivals happening near me." Burger had access to guns owned by his uncle and took and shared one or more pictures of himself with those guns, including sharing one with the person he was discussing his planned attack on the Christian concert with.

The government also uncovered other concerning messages from Burger before and after

the charged threats. In March 2024, he posted on 4chan, an online forum, that his highest ambition was to be a successful serial killer. In July 2024, he typed—in a message captured by the keystroke logger—that he wanted to attack the Austin Police Department and pledged allegiance to the head of the Islamic State. In February 2025, the keylogger captured Burger typing, "We're getting our knives sharpened for your throats." While in state custody after his arrest, he wrote down plans to make a bomb and a list of prior terrorist mass-casualty attacks. The government also obtained evidence that Burger intentionally used Roblox for his communications because he believed it was less likely to be monitored and because law enforcement would not take seriously any statements made on that platform. The government also obtained evidence that in February 2025, using a third screen name, Burger stated he wanted to do a stabbing attack like his "friend" in Europe. The government's evidence shows that in this same time frame, Burger sent violent jihadist propaganda glorifying attacks on Western targets and churches. The government's evidence further shows Burger glorifying dying as a martyr and that he was willing to sacrifice himself "in a blaze of iron and metal…raining bullets upon disbelievers and their soldiers/police."

A federal grand jury charged Burger with two counts of violating 18 U.S.C. § 875(c), which makes it a federal crime to "transmit in interstate or foreign commerce any communication containing . . . any threat to injure the person of another." Count One covered Burger's statements on January 23, 2025, and Count Two covered Burger's statements on January 27, 2025. In a superseding indictment, another grand jury later added Count Three, which covered Burger's statements on January 21, 2025. *See* Superseding Indictment, ECF No. 40. He pleaded not guilty. *See* Order, ECF No. 47.

Burger moved to dismiss the indictment pretrial under Federal Rule of Criminal Procedure 12(b)(1). Def. Mot. to Dismiss 14, ECF No. 53. He argued that the indictment sought to punish

him for protected First Amendment expression because his statements were not constitutionally unprotected true threats. *Id.* at 17. The statements could not be true threats, he argued, because they were insufficiently specific and because the context—an online environment populated by avatars—"drained" the statements of "gravity." *Id.* at 17-18. Invoking the Due Process Clause, he also argued that § 875(c) was unconstitutionally vague and overbroad. *Id.* at 21-22. The government opposed the motion. Response, ECF No. 59.

The Court held hearings on the motion to dismiss the indictment on November 18 and 24, 2025. At the conclusion of the second hearing, the Court orally granted the motion to dismiss. No written order has yet been issued by the Court. Approximately one hour after the conclusion of the hearing, the government moved to stay the Court's dismissal order for 7 to 10 days after the issuance of a written order. Mot. to Stay, ECF 72.[1] The defense has responded to the motion to stay. ECF 74.

## II. Legal Standard for a Stay

"Given the drastic consequences if [a] Court erred in granting" dismissal of an indictment, it is appropriate to stay a dismissal order "in order to give the Government an opportunity to consider its options" regarding potential appeal. *United States v. Schlor*, No. CR-01-360-RHW, 2008 WL 4949037, at *6 (C.D. Cal. Nov. 14, 2008) (stay of dismissal of indictment on speedy trial grounds). Indeed, district courts dismissing indictments over the government's objection frequently enter such stays to allow for appellate review. For example, after ordering dismissal of an indictment on selective prosecution grounds, the United States District Court for the Eastern

---

[1] The defense faults the government for not orally requesting a stay at the conclusion of the hearing. Def. Resp. to Mot. to Stay, ECF 74, at 1. While it is true that the government attorneys, responding to a question from the Court, stated that the effect of the Court's oral pronouncements would be Burger's release that day, the government did not waive or agree not to seek a stay of the Court's order. Immediately upon the conclusion of the hearing, the government's attorneys requested a stay.

District of Virginia stayed its order "pending the United States' appeal to the United States Court of Appeals for the Fourth Circuit." *United States v. Olvis*, 913 F. Supp. 451, 457 (E.D. Va. 1995). Similarly, after dismissing an indictment on statute of limitations grounds, the United States District Court for the Western District of Tennessee stayed dismissal for approximately 60 days. *United States v. Titterington*, No. CR. 2-20165, 2003 WL 23924932, at *2 (W.D. Tenn. May 22, 2003). Likewise, the United States District Court for the Southern District of New York stayed its dismissal order for approximately 18 days "[i]n order to give the Court of Appeals a reasonable opportunity to schedule the [anticipated] appeal" by the United States. *United States v. Johnson*, No. 98 CR. 880 (WK), 1998 WL 841491, at *2 (S.D.N.Y. Dec. 3, 1998), *rev'd on other grounds*, 171 F.3d 139 (2d Cir. 1999).

A stay pending appeal "simply suspends judicial alteration of the status quo." *Veasey* v. *Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (citing *Nken* v. *Holder*, 556 U.S. 418 (2009)). Under Federal Rule of Appellate Procedure 8(a)(1), "[a] party must ordinarily move first in the district court for ... a stay of the judgment or order of a district court pending appeal[.]" Fed. R. App. P. 8(a)(1). The factors considered by courts in determining whether to grant a stay are:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)); *E.T. v. Paxton*, 19 F.4th 760, 764 (5th Cir. 2021) (citing *Nken* and *Hilton*).

A recent decision in the Eastern District of Michigan, *United States v. Williams*, is instructive. Case No. 23-CR-20199, 2024 WL 1977151 (E.D. Mich. May 2, 2024). In that case, the court dismissed an indictment for felon in possession of a firearm under 18 U.S.C. § 922(g)(1). *Id*. at *1. The government moved to stay that decision pending appeal. *Id*. Applying the same

factors cited above, the court granted in part the government's request, concluding "that a limited stay is warranted at this time to allow the government to file its appeal. Once a notice of appeal has been filed by the government under 18 U.S.C. § 3731, the Court may consider whether Defendant's continued detention is appropriate under 18 U.S.C. §§ 3142 and 3143(c)." *Id*. at *2. Significant to the court's decision to grant the stay was the fact that the defendant "poses an unacceptable risk of harm to others" and the court's finding "that failing to grant a stay may pose a risk of injury to the public and that, given the nature of gun violence, that injury may be irreparable." *Id*.

### III.  Argument and Authorities

The government respectfully requests an immediate order staying the execution of this Court's oral order of November 24, 2025, dismissing the indictment in this matter, pending a potential government appeal. If this Court declines to stay its order for the pendency of any appeal, the government respectfully requests that this Court stay its dismissal order until 7 days after this Court enters a written order on the indictment so that the government can seek an emergency stay pending appeal from the Fifth Circuit, *see* Fed. R. App. P. 8(a)(2).

As noted in yesterday's preliminary motion to stay, the government is seeking the Solicitor General's authorization for an emergency appeal of any dismissal order to the United States Court of Appeals for the Fifth Circuit. The government anticipates a prompt determination from the Solicitor General. Immediately upon the Solicitor General's authorization of appeal, the government will file a notice of appeal with this Court. Should the Solicitor General decide not to authorize appeal, the government will promptly notify this Court so that the stay of the Court's order may be lifted.

"[W]hether a stay should be granted depends 'upon the circumstances of the particular

case." *Texas v. United States*, 126 F.4th 392, 421 (5th Cir. 2025) (quoting *Nken*, 556 U.S. at 433). Although "a stay is not a matter of right," a stay "may be called for" when the court is "faced with serious legal questions that merit careful scrutiny and judicious review." *Texas v. United States*, 126 F.5th at 421 (cleaned up). The movant for a stay "need only present a substantial case on the merits when a serious legal question is involved and show that the balance of equities weighs heavily in favor of granting the stay." *Id.* (cleaned up). Here, the balance of equities weighs in favor of a stay—at least for the brief period necessary for the government to seek an emergency stay from the Fifth Circuit should the Solicitor General authorize that request.

First, the government is likely to succeed in showing that the indictment should not have been dismissed under Rule 12. As discussed at length during the hearings on the motion to dismiss the indictment, the government's position is that the statements made by Burger on Roblox on January 21, 23, and 27, 2025, constitute "true threats" and are not protected by the First Amendment. The government also submits that a jury rather than a judge is the correct arbiter of whether the statements at issue constitute true threats. The Court recognized the difficulty of its decision to grant the motion to dismiss, referring to the decision as a "tie" and deferring to the First Amendment rights of Burger to resolve the "tie" and discussing the time which the Court took to consider and decide the issue. The closeness of the call for the Court illustrates the strong showing the government has made that it is likely to succeed on the merits on appeal, and thus weighs in favor of a stay. *Nken*, 556 U.S. at 434.

Second, the government's interests—which also implicate the public's interests embodied in the fourth factor, *see Nken*, 556 U.S. at 435—would be harmed absent a stay. In a criminal case, the "risk that the prisoner will pose a danger to the public" is a factor supporting a stay. *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987). The evidence shows, and the magistrate court previously

found, that Burger poses a danger to the community that cannot be overcome by conditions of release. *See* Order of Detention, ECF 10. Burger was planning a terrorist attack on a Christian music concert on April 12, 2025. He had determined the place and the time but was disrupted by law enforcement's investigation and decisive actions. He exchanged a photo of the weapon he planned to use with a sympathetic individual, claimed to want to become a serial killer, and repeatedly discussed his desire to become a martyr. He further discussed attacking the Austin Police Department and responding with violence (guns and explosives) if law enforcement attempted to arrest him. He shared bomb making plans online and made other bomb making instructions while in custody, along with a list of terrorist attacks. He ascribed to radical Islamic ideology and pledged his allegiance to ISIS and the Islamic State. Those facts show the high level of danger posed by Burger if he were to be released and thus the second and fourth factors strongly support a stay. Burger has also talked about leaving the United States and was found to be a flight risk by the magistrate judge, Order of Detention, ECF 10. Burger's departure from the United States could frustrate further prosecution as a practical matter regardless of a decision from the Fifth Circuit rejecting his arguments for dismissal.

Third, Burger's interests are not dispositive. While an innocent person should not be detained, here the issue of whether the First Amendment protects the statements made by Burger is very much in question. Additionally, if the Court were to grant the stay, it could certainly revisit the issue of detention and hold a hearing to determine whether conditions of release could be crafted sufficient to ensure Burger's appearance and the safety of the community.[2] The government

---

[2] A stay of this Court's dismissal order would leave the superseding indictment in place and therefore obviate Burger's argument that this Court lacks authority to detain him in the absence of pending charges, *see* Def. Resp. to Gov't Mot. to Stay at 1-2. Burger's argument is incorrect. *See, e.g.*, *United States v. Sambasivam*, No. 2:22cr163, 2023 WL 4980932, at *2 (S.D.W. Va. Aug. 3, 2023). In any event, even in the case Burger quotes to support this argument, the district court stayed the defendant's release to allow time for the court of appeals to rule. *See United States v. Arteaga-Centeno*, 360 F. Supp. 3d 1022, 1026 (N.D. Cal. 2019).

anticipates it would oppose release on conditions, but further inquiry could be made by the Court. Similarly, the court in *United States v. Williams* granted in part the government's request for a stay and scheduled a "status conference and/or bond review hearing." 2024 WL 1977151 at *2.

## IV.     Conclusion

WHEREFORE, the United States respectfully requests this honorable Court issue a written opinion explaining the Court's reasoning for that decision and stay that decision pending appeal or for at least 7 days after the Court issues a written order dismissing the indictment to allow time for the Solicitor General to consider whether to appeal this Court's decision to the Fifth Circuit Court of Appeals and, if the decision is made to appeal, to give the government time to file that appeal and request a stay of the Court's order from the Fifth Circuit.

Respectfully submitted,

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

  /s/
KEITH HENNEKE
Assistant United States Attorney
Texas Bar No. 24054497
903 San Jacinto Blvd., Ste. 334
Austin, Texas 78701
(512) 370-1291

MARK T. ROOMBERG
Assistant United States Attorney
Texas Bar No. 24062266
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7100

CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of November 2025, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System that will transmit notification of such filing to the following CM/ECF participants:

Jose Gonzalez-Falla
Charly Herring
Attorneys for Defendant

/s/
KEITH HENNEKE
Assistant United States Attorney