IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.  1:25-CR-00332-ADA |
| | ) | |
| JAMES WESLEY BURGER | ) | |

GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO REVOKE DETENTION ORDER

COMES NOW, the United States of America, by and through its undersigned attorneys, and hereby files its Response to Defendant's Motion to Revoke Detention Order, and states:

### I.     This Court Lacks Jurisdiction to Revoke the Detention Order

The Defendant was initially detained in May 2025 by the magistrate judge as a danger to the community and risk of flight, ECF 13, and was incarcerated until the Court's recent orders releasing the Defendant without conditions. *See* ECF 76, 77, and 83. The Defendant has conceded in an email and by filing his instant Motion to Revoke Detention Order, ECF 98, that the initial detention order is still in effect.

On December 3, 2025, the Fifth Circuit Court of Appeals granted an administrative stay in this case. No. 25-50976, ECF 28. On December 22, 2025, the Fifth Circuit extended that stay indefinitely and further ordered the Court's "second release order" stayed. No. 25-50976, ECF 41. With both of the Court's release orders stayed, Defendant is subject to the original Detention Order, ECF 13, as the defense has conceded. Accordingly, on December 23, 2025, the government filed an Emergency Motion for Arrest Warrant. That same day, the defense filed a Motion to Revoke Detention Order. At approximately 12:30 p.m. on December 23, 2025, the Court convened a status conference with counsel via telephone regarding both requests. After hearing the positions

of both parties, the Court scheduled a hearing on both motions for December 29, 2025 at 10:00 and did not act on either request.

After the status conference concluded, a merits panel for the pending appeal with the Fifth Circuit issued an order setting the briefing and oral argument schedule for that appeal. No. 25-50976, ECF 81. Addressing the issue of the defendant's detention or release on conditions, the order stated:

> To avoid any uncertainty regarding the various orders of the district court and of this court, this merits panel now clarifies that per the December 22 order of the administrative panel, nothing prohibits the government, in its discretion, from detaining the defendant or from requesting that the district court impose conditions of release pursuant to 18 U.S.C. § 3143, pending further order of this court.

*Id*. at 2. The government, in its discretion as permitted by the Fifth Circuit, is seeking to detain the defendant.

In light of the Fifth Circuit Scheduling Order, *id.,* on December 24, 2025, the government filed an *Ex Parte* Renewed Emergency Motion for Arrest Warrant, which the magistrate court also deferred ruling on until the December 29, 2025 hearing.

In *Griggs v. Provident Consumer Discount Co.*, the Supreme Court held that a federal district court and a federal appeals court "should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." 459 U.S. 56, 58 (1982) (per curiam). Thus, once a notice of appeal has been filed, the "district court is divested of jurisdiction to take any action with regard to the matter except in aid of the appeal." *In re Fort Worth Chamber of Commerce*, 100 F.4th 528, 536 (5th Cir. 2024).

The government's appeal from this Court's second release order puts that aspect of the

case squarely before the Fifth Circuit. Thus, other than the limited carve-out set forth by the Fifth Circuit—that *the government* in its discretion can request the district court detain the defendant or impose conditions of release pursuant to 18 U.S.C. § 3143, *id.*—this Court does not have jurisdiction to revoke the detention order or impose new conditions of release until the Fifth Circuit Court of Appeals hands down its decision and mandate on the matters currently pending before it to include the stay of the Defendant's release.

The United States respectfully requests that an arrest warrant issue for the Defendant and that he be detained pursuant to the initial detention order pending ruling by the Fifth Circuit on the merits of its Motion to Stay Order Dismissing Superseding Indictment and Release Pending Appeal.

## II.     Any Action Regarding Release Not Specifically Permitted by the Fifth Circuit Would Violate the Stay Order

As described above, on December 22, 2025, the Fifth Circuit extended indefinitely the administrative stay of the Court's order dismissing the superseding indictment and first release order and ordered the Court's "second release order" stayed. No. 25-50976, ECF 41. Unlike the original administrative stay order of the first release order, which explicitly authorized the Court to provide relieve "pursuant to 18 U.S.C. § 3143," No. 25-50976, ECF 28, the stay of the second release order provided no such authorization for the Court. No. 25-50976, ECF 41. As quoted above, the subsequent order setting the briefing and oral argument schedule for the appeal, No. 25-50976, ECF 81, provided only a narrow exception to "the various orders of the district court and of this court" which permits the government, in its discretion, to detain the defendant or request that the district court impose conditions of release. *Id.*

The relief requested by the Defense, revocation of the Detention Order, is outside the limited

exceptions to the stay provided by the Fifth Circuit. Accordingly, such relief would be in violation of the stay. The Court should accordingly deny the defense motion.

### III. Only the District Court Can Review a Detention Order Under 18 U.S.C. § 3145(b)

The defense requests that the Detention Order be revoked "pursuant to 18 U.S.C. § 3145." Mot. to Revoke Det. Order, ECF 98, at 1. However, § 3145(b) grants the district court, the "court having original jurisdiction over the offense," with the authority to review an order of detention. 18 U.S.C. § 3145(b). Thus, only the district court, and not another magistrate court, can review a detention order under § 3145(b).

To the extent that the defense may be seeking to have the detention hearing reopened under 18 U.S.C. § 3142(f)(2), the proper judicial officer for such inquiry would be "the judicial officer" who issued the detention order, in this case the Honorable Mark Lane. 18 U.S.C. § 3142(f)(2). "Revocation of a prior release order under § 3142(f) is available only when the review of a detention or release order is being conducted by the same judicial officer who entered the order and when new, material information is available." *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003); *see also United States v. Coke*, Case. No. 2:25-CR-01943-EG-1, 2025 WL 2858031, at *2 (W.D. Tex. Sept. 10, 2025) (discussing that "the judicial officer" under § 3142(f)(2) is the judicial officer who made the detention decision and that district courts and not magistrate courts can review the detention decision under § 3145).

### IV. Defendant Remains a Danger to the Community and Should Be Detained

If this Court believes it has jurisdiction to consider the Defendant's Motion to Revoke Detention Order, the United States respectfully submits this Court should not revoke the detention order.

### A. Defendant's Long History of Making Violent Threats and Plans to Execute Threats

Even if the Defendant had substantiated the various assertions he has made about his behavior, location, and access to weapons since this Court ordered him released, ECF 98, 4-6, his motion ignores the more than a year of making violent statements and threats and his plans to carry out his violent attack.

The charges arises from threats Burger issued in an online platform called Roblox. Roblox allows users to create online environments called "experiences"—often games, but sometimes as in this case more akin to chatrooms—that they and other users can populate through online avatars. Burger issued his threats using avatars "Ghurabahh" and "Crazz3pain" in a Roblox environment called "Church." The government obtained evidence that Burger intentionally used Roblox for his communications because he believed it was less likely to be monitored and because law enforcement would not take seriously any statements made on that platform. Multiple people saw the Defendant's various threats, believed them to be real, and took concrete steps to prevent the Defendant from carrying out his violent desires: Defendant's uncle put a keylogger on the computer the Defendant used and removed the firearms from the house to a secure site off premises; and two different experienced users of Roblox separately contacted the FBI to report what they considered to be real threats.

### Charges

On January 23 and 27, 2025, the threats charged in Counts One and Two, respectively, Burger made statements on Roblox indicating that he was planning to attack a Christian music concert or festival, kill or injure the Christians, and seek or achieve martyrdom. On January 23,

when a Roblox user asked, "[H]ow many days until you do thay [sic]?" Detention Hr'g, Gov't Ex. 1. Burger—using the avatar Crazz3pain— responded:

> It will be months
> Shawwal
> April
> It will be a glorious wound
> Upon their capitol
> And deal a grievous wound upon the followers of the Cross

*Id.* The other user responded, "Akhi, we will make dua [prayers] for u once u martyr," "I[']ll keep you in my prayers," and "InshaAllah ill follow after you." *Id.* Burger then replied,

> I cannot confirm anything aloud at the moment
> But things are in motion

*Id.* When the other user turned to another avatar and said, "ALI MY BROTHER IS ABOUT TO DO HIS ATTACK," Crazz3pain responded, "Don't delay yourselves too long brothers, Jannah [heaven] awaits us." *Id.* An experienced Roblox user in Nevada saw this exchange and believed it to be a threat as opposed to trolling or role-playing. That witness also reported statements by Crazz3pain not captured in screenshots, including that Crazz3pain would do something at a Christian music concert and become a martyr; that he was going to punish worshippers of the cross; and that another user could check Discord, an online-communication platform, to see photographs of the guns Crazz3pain planned to use in the attacks.

On January 27, keystroke logger on the computer Burger was using indicates that he (as Crazz3pain), stated in Roblox:

> I've come to conclude it will befall the 12 of Shawwal aa
> And it will be a music festival
> Attracting bounties of Christians
> In'shaa'allah we will attain martyrdom
> And deal a grievous wound upon the followers of the Cross

> Pray for me and enjoin yourself to martyrdom

Detention Hr'g, Gov't Ex. 2 (hard returns added for readability). As Burger's earlier statement clarifies, "the 12 of Shawwal" means April 12, and there was a prominent Christian concert scheduled for April 12, 2025, in Austin. Before and after January 27, 2025, Burger visited the website for LiveNation, the company promoting that concert. And at some point, Burger searched on his phone for "Festivals happening near me."

On January 21, 2025, the subject of Count Three, Burger—using the avatar Ghurabahh—stated:

> Yes I have guns
> Incase the authorities
> Want to arrest me

When another avatar asked, "[W]hat are you gonna do if they try?" Burger responded:

> I am ready
> To sacrifice my life
> For my Rabb
> Detonate what I've prepared
> Of munitions
> And use my firearms
> To take many with me
> Yes wish me luck
> On the path of martyrdom
> In'shaa'allah

A witness in Pennsylvania experienced with Roblox saw this statement, believed it to be a threat—as opposed to "trolling" (deliberate provocation) or role-playing, and reported it to the FBI.

### Defendant's Overall Plan

While the charges themselves span only over a week's time, the Defendant's evolving plan started ten months before and was to culminate two and half months later with an April 12, 2025,

attack upon a Christian concert in Austin. Contrary to Defendant's argument, not all of his plans were carried out in Roblox, which negates his postulation that threats on Roblox cannot be true threats. In March 2024, he posted on 4chan, an online forum without a gaming platform, that his highest ambition was to be a successful serial killer; the Defendant cannot remotely argue he said this as an avatar.

In July 2024, he typed in Roblox—in a message captured by the keystroke logger—that he wanted to attack the Austin Police Department and pledged allegiance to the head of the Islamic State. That same day, in the Discord communication platform, the Defendant also stated he pledged allegiance to the head of the Islamic State. In a December 10, 2024, conversation, the Defendant cautioned another to end a discussion because it could draw suspicion from law enforcement where his companion responded that he did not think the authorities will monitor "some children's game like roblox." In February 2025, the keylogger captured Burger typing in Roblox, "We're getting our knives sharpened for your throats." Around the same time, Burger stated that he wanted to perpetrate a stabbing attack like a "friend" in Europe and that he was willing to sacrifice himself "in a blaze of iron and metal…raining bullets upon disbelievers and their soldiers/police."

The Defendant made consistent statements of wanting to commit mass murder and seeking martyrdom in other platforms where the Defendant cannot argue he was an avatar. In a December 27, 2024, Telegram chat, the Defendant stated his desire to die a martyr. In a January 2, 2025, Discord chat, the Defendant stated "May ou[r] lives be sanctified in martyrdom for the sake of Allah." In a January 23, 2025, Discord chat, the Defendant sent beheading videos and images of ISIS propaganda, including attacks against churches. In a January 31, 2025, Discord chat, the Defendant talked about his rifle training on the range with scopes. In a February 10,

2025, Discord chat, the Defendant stated he was putting money aside for a suppressor. On December 18, 2024, and January 23, 2025, the Defendant did Google searches for LiveNation, the sponsor of the April 12, 2025, Austin Christian concert. His Google searches also show his desire to carry out his attack on this concert with searches for: "which month is April in islam", "what is the most effective sharp knife type", "lone wolf terrorist isis",  "kill the disbelievers where you find them quaran", "kill cops not trees", "isis beheads coptic christians", "festivals happening near me", "269 christians killed", and searches for various types of ammunition.

Most tellingly, despite being in state custody following his February 28, 2025 arrest, the Defendant's planning for an attack did not cease. While in state custody, the Defendant wrote down plans to make a destructive device and a list of mass-casualty attacks. Detention Hr'g, Gov't Ex. 12. He also wrote on the same paper: "Je suis Islamique Etat" and "Je suis ISIS", which translates from French to "I am Islamic State" and "I am ISIS," respectively.

### Detention Hearing

The government moved for detention of the Defendant, and his counsel has conceded that the Defendant "requires supervision" and "monitoring," 64:18-20 (Det. Hr'g Tr.), and has an "adolescent attraction to the idea of martyrdom," Opp'n to Emergency Stay Mot. 11, No. 25-50976, ECF No. 22. After a contested detention hearing, the Honorable U.S. Magistrate Judge Mark Lane granted the government's motion to detain Burger, finding that no condition or combination of conditions of release would assure his appearance or assure the safety of any other person and the community. Order of Detention, ECF 13. Evidence of Burger's danger to the community included his threats described above, the fact that he stated a particular date for his planned attack on a Christian concert, "the 12 of Shawwal," which meant April 12, 2025, and there was a prominent Christian concert scheduled for April 12, 2025 in Austin, Texas. Before

and after January 27, 2025, Burger visited the website for LiveNation, the company promoting that concert. And at some point, Burger searched on his phone for "Festivals happening near me." Burger had access to guns owned by his uncle and took and shared one or more pictures of himself with those guns, including sharing one with the person he was discussing his planned attack on the Christian concert with. Burger threatened earlier this year to "attain martyrdom" at a Christian music festival and to "[d]etonate . . . munitions" and "use [his] firearms . . . on the path of martyrdom" if approached by law enforcement, ECF 14 at 11; Government Trial Exhibit 3 (submitted to the district court November 24, 2025); and while in state custody earlier this year, carried plans to make a bomb "that will turn nails, nuts and bolts into <u>active</u> shrapnel," ECF 14 at 17-19 (emphasis in original)—plans that an agent testified could potentially result in a destructive device, Att. U at 27:13-20.  As Burger admitted himself in his jailhouse writings along with his bomb plans and completely separate from Roblox: "JeSuisIsis" – I am ISIS.

## V. Conclusion

The United States respectfully submits that this Court lacks jurisdiction to hear and to grant the Defendant's Motion to Revoke Detention Order. The government respectfully requests that this Court immediately issue an arrest warrant to carry out the Fifth Circuit's stay and detain the Defendant pursuant to the initial detention order and the Fifth Circuit's orders of December 22, 2025, and December 24, 2025, pending ruling by the Fifth Circuit on the government's appeals from this Court's release orders.

The United States respectfully does not choose to exercise its discretion to request conditions of release for the Defendant and, in fact, opposes conditions of release for the Defendant as he remains a risk of flight and danger to the community that no conditions of release can overcome.

If this Court makes the decision that it does have the authority to impose conditions of release for the Defendant over the government's objections both as to jurisdiction and that the Defendant still poses a danger to the community that cannot be overcome with any conditions of release, without waiving any objections, the United States respectfully requests that the strictest conditions of release should be imposed, to include at minimum: home detention with electronic monitoring; no unmonitored internet access or electronic communications; no leaving home except for psychiatric treatment or psychological counseling; verified determination by Pretrial Services that the Defendant does not have access to firearms where he is living; no authorization that the Defendant be allowed to attend any organized religious gatherings given his stated threats to attack Christian venues and admissions that attacks can be carried out with knives or cars; the Defendant shall not commit a Federal, State, or local crime during the period of release; and the Defendant shall cooperate in the collection of a DNA sample.

    Respectfully submitted,

    JUSTIN R. SIMMONS
    UNITED STATES ATTORNEY

    _/s/_____
    MARK T. ROOMBERG
    Assistant United States Attorney
    Texas Bar No. 24062266
    601 NW Loop 410, Suite 600
    San Antonio, Texas 78216
    (210) 384-7100

    KEITH HENNEKE
    Assistant United States Attorney
    Texas Bar No. 24054497
    903 San Jacinto Blvd., Ste. 334
    Austin, Texas 78701
    (512) 370-1291

CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of December 2025, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System that will transmit notification of such filing to the following CM/ECF participants:

Jose Gonzalez-Falla
Charly Herring
Attorneys for Defendant

_____/s/_____
MARK ROOMBERG
Assistant United States Attorney

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | No.  1:25-CR-00332-ADA |
| ) | |
| **JAMES WESLEY BURGER** ) | |

## O R D E R

This matter having come before the Court on the Defendant's Motion to Revoke Detention Order, and the Court having received the Government's Response thereto, and the Court being otherwise fully advised in the premises,

IT IS HEREBY ORDERED that, for the reasons set forth in the Defendant's Motion to Revoke Detention Order be in all things DENIED/GRANTED.

IT IS SO ORDERED.

SIGNED and ENTERED this           day of December 2025, Austin, Texas.


_____
HONORABLE DUSTIN HOWELL
United States Magistrate Judge