**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **NO.    A-25-CR-00332 (ADA)** |
| | § | |
| **JAMES WESLEY BURGER** | § | |

**DEFENDANT JAMES BURGER'S SUPPLEMENTAL RESPONSE TO THE**
**GOVERNMENT'S NOTICE PURUSANT TO FEDERAL RULE OF EVIDENCE 404(b)**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE ALAN D. ALBRIGHT:

Mr. Burger, through undersigned counsel, respectfully submits this supplemental response

to the Government's Amended Notice Pursuant to Federal Rule of Evidence 404(b). ECF Doc.

No. 58. The government has provided defense counsel with most of its proposed trial exhibits, the

majority of which constitute impermissible 404(b) evidence.[1] Mr. Burger submits this

supplemental response to clarify his position on the government's 404(b) notice now that counsel

possesses the specific items of 404(b) evidence that the government intends to offer.

## I.    Legal Framework

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible

to prove a person's character in order to show that on a particular occasion the person acted in

accordance with the character." Fed. R. Evid. 404(b). Rule 404(b) "follows the venerable principle

that evidence of extrinsic offenses should not be admitted solely to demonstrate the defendant's

bad character." *United States v. Beechum*, 582 F.2d 898, 910 (5th Cir. 1978) (en banc) (noting that

such evidence, even if relevant, is "inherently prejudicial"). "Evidence of a person's character or

---

[1] The government has advised it may have a few more exhibits to add and will do so in compliance with the Court's May 12, 2026, deadline.

character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(b).  This rule "guard[s] against the inherent danger that the admission of 'other acts' evidence might lead a jury to convict a defendant not of the charged offense, but instead of an extrinsic offense." *United States v. Crawley*, 533 F.3d 349, 353 (5th Cir. 2008) (quotations omitted).

The Fifth Circuit has adopted a two-part test for determining the admissibility of evidence under Rule 404(b). *United States v. Kinchen*, 729 F.3d 466, 471 (5th Cir. 2013).  First, the Court must determine if "the extrinsic evidence is relevant to an issue other than the defendant's character." *Beechum*, 582 F.2d at 911; *United States v. Jackson*, 339 F.3d 349, 354 (5th Cir. 2003) ("Evidence in criminal trials must be strictly relevant to the particular offense charged."). Evidence is relevant if it has "any tendency" to make a fact of consequence to determining the action "more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Second, "the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403."  *Beechum*, 582 F.2d at 911. To determine whether undue prejudice substantially outweighs probative value courts should consider: "(1) the government's need for the extrinsic evidence, (2) the similarity between the extrinsic and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions." *Kinchen,* 729 F.3d at 473. Finally, the Court must also "consider the overall prejudicial effect of the extrinsic evidence." *United States v. Juarez*, 866 F.3d 622, 627 (5th Cir. 2017).

## II.     The Pending Charges

The Second Superseding Indictment, filed April 21, 2026, charges Mr. Burger with three counts of interstate threatening communication. The indictment charges three communications Mr. Burger is alleged to have made on Roblox on January 21, 23, and 27, 2025. ECF Doc. No. 120.

Count one alleges that on January 23, 2025, Mr. Burger stated:

It will be months…Shawal…April…It will be a glorious wound…Upon their capitol…And deal a grievous wound upon the followers of the Cross…I cannot confirm anything aloud at the moment…But things are in motion…Don't delay yourselves too long brothers, Janah awaits us.

*Id.* at pg. 1. Count two alleges that on January 27, 2025, Mr. Burger stated:

I've come to conclude it will befall the 12 of Shawwal aa/And it will be a music festival/Attracting bounties of Christians s/In'shaa'allah we will attain martyrdom /And deal a grevious wound upon the followers of the Cross /Pray for me and enjoin yourself to martyrdom.

*Id.* at pg. 2. Count three alleges that on January 21, 2025, Mr. Burger stated:

I have guns…In[ ]case the authorities…want to arrest me…I am ready…To sacrifice my life…For my Rabb…Detonate what I've prepared…Of munitions…And use my firearms…To take many with me…Yes wish me luck…On the path of martyrdom…In'shaa'allah.

*Id.* at pg. 3.

## III.     The government's 404(b) notice

The government provided notice of its intent to offer thirteen categories of evidence. The government first argues that each of these thirteen categories of evidence are intrinsic to the charged offenses because each piece of evidence shows that Mr. Burger "was serious about his threats to attack Christians and a Christian concert[.]" ECF Doc. No. 58 at pg. 2. The government then claims that even if the thirteen categories of evidence are not intrinsic, they are admissible to show Mr. Burger's "knowledge, motive, opportunity, intent, preparation, plan, identity or absence

3

of mistake or accident, and predisposition to commit the charged crimes." *Id.* at pg. 3. The government makes no specific argument as to any piece or category of evidence.[2]

### IV.    Argument

The thirteen categories of evidence can be split into seven groups. First, statements made by Mr. Burger online or in video games. Second, keylogger evidence. Third, Mr. Burger's online search history. Fourth, notes Mr. Burger made while in custody. Fifth, photos of Mr. Burger. Sixth, Mr. Burger's conversation with his aunt after his arrest. Seventh, the allegations that Mr. Burger attempted to bring a firearm to school.

1. **The Court should exclude evidence of statements and images made by or shared by Mr. Burger online in Discord and other online platforms outside of Roblox.**

The government seeks to introduce numerous statements made by Mr. Burger either online or in video games. Through its proposed exhibits, the government seeks to introduce chats on Discord between Mr. Burger and other users of Discord. None of the chats are conversations with the tipsters who reported the Roblox statements. Instead, the Discord chat evidence the government intends to offer includes:

- A Discord chat pledging allegiance to Abu Bakh al Baghdadi from July 24, 2024.[3]

- A Discord chat with user "bigas96" which includes 16 images of highly inflammatory content such as masked men holding assault rifles marching against ISIS flags, jihadi fighters, former President Obama, Jesus being crucified, houses destroyed in a terrorist attack, and a man being executed at gunpoint, among other

---

[2] Rule 404(b)(3)(B) requires more than just notice of intent to offer evidence. The prosecution also must articulate both (1) the "permissible purpose" for which the evidence will be offered and (2) how the evidence tends to prove that permissible purpose without relying on an inference about the accused's character. *See, e.g., United States v. Abarca*, 61 F.4th 578, 580-81 (8th Cir. 2023) (providing defendant with copy of witness's pretrial interview did not comply with (3)(B) requirement because it provided notice only of general nature of testimony). "The United States bears the burden to articulate the chain of propensity-free inferences for each piece of evidence offered." *United States v. Davitashvili* , 602 F. Supp. 3d 704, 718 (E.D. Pa May 9, 2022). Here, the government has made no attempt to articulate any argument as to how its thirteen pieces of evidence meet a permissible purpose, and its 404(b) notice is insufficient.
[3] Government Exhibit 10A.

images. These appear to be stills from an Islamic state propaganda video partially titled "explosions that make children stress.mov."[4]

- A Discord chat from January 31, 2025, with Discord user "peanutmesiter69" which references Burger having done "good proper rifle training."[5]

- A Discord chat from February 10, 2025, with Discord user "federalagent091" in which Burger states that he's "put money aside for a suppressor."[6]

- A Discord chat from January 2, 2025, with user "Ahmeddaliboufaida" in which he shares an image taken from Twitter of a message in Arabic that translates to "May our lives be sanctified in martyrdom for the sake of Allah."[7]

- Telegram messages from December 27, 2024, that include a photo of Hitler and messages directed to unknown recipients stating "This world has no purpose and is obviously limited in what it can offer the both of us. So why not die a Shaheed?," which translates to martyr.[8]

- Mr. Burger's Discord profile picture of an ISIS militant.[9]

The government also seeks to introduce statements regarding how to make a bomb while playing Roblox,[10] statements Mr. Burger made online about wanting to do a stabbing attack,[11] and Mr. Burger's statement on Roblox that "anyone whom leaves his lands…and dies a Shaheed [martyr] will receive immense rewards… [and] if it became necessary…[he] would sacrifice [himself] in a frenzy 100%," and that "frenzy" meant "in a blaze of iron and metal…raining bullets upon disbelievers and their soldiers/police."[12] The government also seeks to introduce a statement made on March 26, 2024, that his highest ambition was to be a successful serial killer.[13]

---

[4] Government Exhibit 19.
[5] Government Exhibit 22.
[6] Government Exhibit 23.
[7] Government Exhibit 25.
[8] Government Exhibit 26.
[9] Government Exhibit 7.
[10] Government Exhibit 11 and Item 2 in the government's amended notice.
[11] Government Exhibit 14 and Item 4 in the government's amended notice.
[12] Item 11 in the government's amended notice. This statement appears to have been made directly to one of the tipsters in a subsequent interaction on Roblox. If that is the context, Mr. Burger would not object to admission of that specific statement.
[13] Item 12 in the government's amended notice. Defense counsel is not aware of the source of this statement from discovery and has asked the government to identify the specific item it seeks to introduce on this point.

Mr. Burger objects to the introduction of all these statements because none of the statements are relevant to any issue other than Mr. Burger's character.

The government first argues that all of these statements are "intrinsic" to the charged offenses. "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." *United States v. Williams*, 900 F.2d 823, 825 (5th Cir. 1990). Many of these statements were made months—as many as seven or eight months—prior to the alleged threats at issue in this case. Prior statements not proximate in time to the charged statements are not part of the criminal episode at issue.

Additionally, all statements made on the platform Discord were not made in the game Roblox nor were they made to the Roblox users who were the recipients of the specific statements charged as threats in the indictment. Statements made on different online platforms to different individuals in different contexts are not intrinsic to the charged statements made in Roblox.

Further, the government fails to explain how any of these statements, which do not reference or relate to the purported threat to a Christian concert, are "inextricably intertwined" with the statements charged in the indictment. Essentially, the government argues that every statement Mr. Burger made online or in Roblox is "inextricably intertwined" with the charged conduct. Such an argument stretches the rule of "intrinsic" evidence too far. Therefore, these statements are not intrinsic to the offense charged.

Because the evidence is extrinsic, the government must show the statements are relevant to an issue other than Mr. Burger's character. *Beechum*, 582 F.2d at 911. The purpose of Rule 404(b) is to "guard against the inherent danger that the admission of 'other acts' evidence might lead a jury to convict a defendant not of the charged offense, but instead of an extrinsic offense."

6

*United States v. Sumlin,* 489 F.3d 683, 689 (5th Cir.2007). As is evident from the number of statements the government seeks to introduce, the government is simply attempting to introduce any and every statement made by Mr. Burger it deems upsetting or frightening. They seek to introduce these statements without ever showing how a particular statement is relevant to one of the permissible uses in Rule 404(b). As Justice Sotomayor recognized in her concurrence in *Counterman v. Colorado*, the burdens of over-criminalization of speech will fall hardest on certain groups, "including religious and cultural minorities," whose language can be "more susceptible to being misinterpreted by outsiders. And unfortunately yet predictably, racial and cultural stereotypes can also influence whether speech is perceived as dangerous." 600 U.S. 66, 88-89 (2023) (Sotomayor, J., concurring).

The government makes no specific argument for any statement, instead listing every permissible purpose included in Rule 404(b), and merely states that every item listed in their notice shows Mr. Burger's "knowledge, motive, opportunity, intent, preparation, plan, identity or absence of mistake or accident[.]" ECF Doc. No. 58 at pg. 3. These statements, however, are not relevant to any of the listed permissible purposes. For example, while intent may be at issue in the trial, the government fails to show how the proffered statements would establish that Mr. Burger intended the charged statements concerning the Christian concert to be serious expressions that he intended to commit an act of unlawful violence. None of the Discord exhibits the government seeks to introduce reference Christian concerts. They are not relevant to statements about "attacking a Christian concert," which the government alleges was Mr. Burger's plan. Any statements made outside of Roblox or that were not or could not have been seen by other players on Roblox are irrelevant because they would be unknown to the recipients of the charged statements. Rather, these other statements are classic propensity evidence. Their relevance rests solely on an argument

that he made seemingly threatening statements in the past, so he must have intended the charged statements to be threats.

In fact, the government seemingly recognizes that its proffered evidence is character evidence. The government lists as one of the purposes of the evidence is to show Mr. Burger's "predisposition to commit the charged crimes." ECF Doc. No. 58 at pg. 3.[14] This is undisguised argument that the evidence shows Mr. Burger's character. But evidence of a person's bad character is explicitly prohibited because it is inherently prejudicial. *Beechum*, 582 F.2d at 910. "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(b). Therefore, the government has not established that the extrinsic evidence is relevant to an issue other than Mr. Burger's character, and the statements are inadmissible.

Other courts have excluded other, unrelated threatening statements under Rule 404(b) in prosecutions for violating 18 U.S.C. § 875(c). *See United States v. Abbott*, No. 24-CR-20098, 2025 WL 1445720 (S.D. Fla. May 20, 2025). In *Abbott*, the government sought to introduce evidence that two weeks after the charged threats to shoot the police took place, the defendant's wife "called 911 and reported that her husband had threatened to kill her, her family and then himself." *Id.* at *2. The government argued that it was evidence of intent and knowledge, showing the defendant "knew that when he threatened to shoot the officers, it would be construed as a threat, just as it was when he threatened to kill his wife" or that the evidence was intrinsic because the close-in-time incidents showed how the police interpreted the defendant's threats. *Id.* The Court, however, granted the defendant's motion to exclude the evidence, holding that uncharged threatening

---

[14] Evidence of "predisposition" may be relevant in cases where a defendant claims entrapment because it then becomes the government's burden to show predisposition. *See United States v. Cervantes*, 706 F.3d 603, 616 (5th Cir. 2013). Here, Mr. Burger is not arguing he was entrapped, and any argument of that he was predisposed to commit the offense is not relevant.

statements had no bearing on "his intent two weeks prior, when the charged conduct took place."

*Id.* at *3. The Court reasoned:

> There is no relationship between the threats Defendant allegedly made to his wife and in-laws and the threats for which he is charged. Instead, as Defendant argues, "the sole purpose of [introducing] the call at trial would be to prove propensity.... [T]he call is being used to invite the inference that if [Defendant] threatened his wife and in-laws on December 31, 2022, he must have meant to threaten cops" when he sent the December 18, 2022 email.

*Id.* The uncharged threats were not intrinsic to the charged offense because they occurred on separate dates and in unrelated contexts. *Id.*

Like the statements at issue in *Abbott*, the sole purpose of introducing these statements at trial is to prove propensity. These statements are being used to invite the inference that if Mr. Burger made statements concerning violence on other occasions, he must have meant to threaten violence in the charged statements.

Second, even if the Court finds that these statements are relevant to a fact of consequence, the government fails to meet *Beechum's* second step. Any probative value is substantially outweighed by its undue prejudice. *Beechum*, 582 F.2d at 911. Any probative value of these statements—which is minimal to start with—would be substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. The images from Discord are highly inflammatory, as they depict acts of terrorism and violence and would do nothing but stoke the potential for bias in members of the jury. Introduction of these statements, particularly in light of the great number of statements the government is attempting to introduce, also poses a substantial risk of confusing the issues and misleading the jury. Rather than focusing on whether the charged statements are "true threats," as required by the First Amendment, introduction of these extraneous statements and images risks the jury convicting solely on the basis of emotion and prejudice.

2. **The Court should exclude keylogger evidence that is not part of the statements charged as threats in the indictment.**

The government notices its intent to introduce evidence that Mr. Burger's uncle, Jim Best, put a keylogger on the family computer and removed firearms from the family home. Mr. Burger previously did not object to the introduction of this fact.

However, upon receipt of a portion of the government's exhibits, it is clear the government intends to introduce extensive *content* from the keylogger installed by Mr. Burger's uncle. Specifically, the government seeks to introduce statements captured by the keylogger from dates other than those charged in the indictment. That is, the government seeks to introduce lengthy keylogger captures from January 16-27, 2025;[15] July 24, 2024;[16] February 3, 2025;[17] December 10, 2024;[18] and December 16, 2024.[19] While the proposed exhibit list includes many statements, the government's notice references only four statements:

- "I think the Austin Police Department /Would be a good target /Cuz I hate /The police so much /I hate all constitutions and government /Outside of the Sharia /And all laws outside of Sharia /All man-made law is illegitimate" "But yah I would /Definitely kill a lot of cops someday"
- "BAkhi, lets not discuss this here, it is very unsafe And leads to authorities becoming suspect of your actions or intentions ch782848"
- "I've come to conclude it will befall the 12 of Shawwal aa/And it will be a music festival /Attracting bounties of Christians s/In'shaa'allah we willl attain martyrdom /And deal a grevious wound upon the followers of the Cross /Pray for me and enjoin yourself to martyrdom"
- "We're getting our knives sharpened for your throats" "Mock us all you want but the spark has been lit ? The spark of your demise //You're going to kneel / What happens after is of no knowledge to me /D"

As a preliminary matter, the third statement the government includes in its 404(b) notice is the communication that forms the basis of Count Two. Mr. Burger does not object to the

---

[15] Government Exhibit 2.
[16] Government Exhibit 10a.
[17] Government Exhibit 10b.
[18] Government Exhibit 10c.
[19] Government Exhibit 10d.

introduction of that statement. However, he objects to keylogger statements that were not made on the dates charged in the indictment as the dates the government alleges Mr. Burger made threats in Roblox.

Mr. Burger objects to keylogger evidence outside the dates charged in the indictment for the same reason he objects to the introduction of other statements he made online and in video games. Uncharged statements from non-contemporaneous dates are not intrinsic to the charged offenses because they weren't made at the same time as the charged statements. These unrelated statements online are not relevant to any permissible purpose of 404(b) evidence.

3. **The Court should exclude Mr. Burger's search history.**

The government seeks to introduce select items from Mr. Burger's Google search history.[20] In its proposed exhibit, the government seeks to introduce 46 searched terms: "which muslim countries have nukes," "which month is september," "which month is april in islam," "what type of fleet did the us send to israel," "what type of clothing does the taliban wear," "what type of clothing does the Islamic state wear," "what type of camouflage does hamas use," "what is the punishment for the one who ibsults [sic] allah or his messenger," "what is the most effective sharp knife type," "WASR gun," "WASR .45," "people who committed terrorist attacks for christianity," "p80," "M14," "lone wolf," "lone wolf truck isis propaganda," "lone wolf terrorists isis propagkd [sic]," "lone wolf terrorists," "kill the disbelievers where you find them quran," "kill cops not trees," "can you kill a woman who foesnt [sic] wear hijab," "abu bakr al suedi," "972 magazine AI," "38 round," "isis beheads coptic christians," "is abu bakr apart [sic] of ahlul bayt," "ginger isis member," "g43x," "g19," "festivals happening near me," "dead Christians in arab lands," "269 christians killed, ".45," and ".223." The Court should exclude this evidence.

---

[20] Government Exhibit 9.

The government first argues that every term or phrase Mr. Burger searched online is "intrinsic" to the charged offenses. Notably, the government is cherry-picking 46 searched items from the 6,610 total items that returned as Mr. Burger's searched items.[21] The government fails to explain how any of these statements are "inextricably intertwined" with the statements charged in the indictment. The search history is undated. It is unknown when Mr. Burger searched these terms. The government's notice does not indicate when, in relation to the alleged threats charged in the indictment, the searches were conducted. Nor does the government's notice indicate what results, if any, the searches returned or if Mr. Burger interacted with any of the results.

Therefore, the search history is extrinsic, and the government must show the statements are relevant to an issue other than Mr. Burger's character. *Beechum*, 582 F.2d at 911. The government fails to make any argument as to how any specific search term is relevant to one of the permissible uses in Rule 404(b). Further, any probative value is substantially outweighed by its undue prejudice and will confuse the jury. *Beechum*, 582 F.2d at 911.

4. **The Court should exclude "cookies" from Mr. Burger's phone.**

Similar to the search history, the government seeks to introduce an exhibit of "cookies," that is, saved browsing information, stored on Mr. Burger's iPhone.[22] This includes visits to the following domains: universalsurplus.com, armyandoutdoors.com, kommandostore.com, gomilitar.com, sixgunsurplus.com, and livenation.com. The Court should exclude this evidence.

Like the search history, the government is cherry-picking cookies that it intends to twist into support for its theory that Mr. Burger was planning to attack a Christian concert. The

---

[21] Discovery produced by the government notes that a total of 6, 610 items returned as the "searched items" from Mr. Burger's cellphone. The FBI review of the 6,610 items deemed only 76 items "evidentiary." The FBI agents responsible for reviewing all searched items deemed 5,578 items "not relevant to the current investigation." SA-4008696-Unclassified Serial 9. In November 2025, defense counsel has asked the government to produce the 5,578 searched items deemed not relevant to this case. To date, the government has not responded to this request.

[22] Government Exhibit 24.

government fails to explain how any of these browsing history records are "inextricably intertwined" with the statements charged in the indictment. Such evidence is problematic because a record of browsing history shows only a website visited, not items searched within the website, purchases made, or any further interaction with the website content. The government has selected from a massive browsing history only websites with military or guns or surplus in the website titles so that it can, presumably, make entirely speculative claims about what Mr. Burger could have searched for there.

Additionally, the government has fixated on a visit to the "Live Nation" website to support the bald claim it intends to advance at trial that Mr. Burger had identified a specific concert at his target. This is a claim that has no support in actual evidence,[23] and the admission of extrinsic, out-of-context search history is improper 404(b) evidence. Further, any probative value is substantially outweighed by its undue prejudice and will confuse the jury. *Beechum*, 582 F.2d at 911.

5. **The Court should exclude the excerpts of a popular thriller novel Mr. Burger copied while in custody.**

The government seeks to introduce handwritten notes made by Mr. Burger while in state custody.[24] The government argues that these notes include Mr. Burger's "bombmaking plans."[25] The notes are actually excerpts that Mr. Burger copied almost verbatim from a popular best-selling thriller novel "*In the Blood*" by Jack Carr.[26]  Yet the government intends to call two FBI explosive

---

[23] In April 2026, a federal jury found that Live Nation Entertainment operates as an illegal monopoly, violating federal antitrust law by dominating the event industry and inflating ticket prices. The DOJ's antitrust division prosecuted the case, arguing that the company holds undue control over concern promotion, venues, and ticketing. Isabella Gomez Sarmiento, "Jury finds that Live Nation acted as monopoly and overcharged ticket buyers," NPR, Morning Edition, April 15, 2026, *available at* https://www.npr.org/2026/04/15/nx-s1-5786715/live-nation-ticketmaster-antitrust-verdict-monopoly Yet now the DOJ in Mr. Burger's case wants ask the jury to assume that browsing history reflecting a visit to the Live Nation website should be presumed to be specific evidence of interest in a specific concert that it intends to assert at trial.

[24] Government Exhibit 15.

[25] The government advised defense counsel that it intends to notice as an expert an FBI Explosives Forensic Examiner who reviewed Mr. Burger's handwritten notes and concluded that the notes "are instructions to assemble components of a potentially viable IED."

[26] In the Blood is a 2022 thriller novel by New York Times bestselling author Jack Carr, and is the fifth book in his Terminal List series, which follows former Navy SEAL James Reece on a global hunt for a master sniper.

experts to testify at trial that the notes "are instructions to assemble components of a potentially viable IED."

These notes are not "intrinsic" to the charged offenses because they are not "inextricably intertwined" with the charged threats, nor are they "necessary preliminaries" to the crimes charged. *Williams*, 900 F.2d at 825. Mr. Burger's notes were made long after the purported threats occurred and in fact months after he had already been arrested, charged, and was in custody at the Williamson County jail. It is unclear how excerpts Mr. Burger copied from a popular novel available to him in custody can be said to be "inextricably intertwined" with the alleged threats. In order for a communication to be a threat under § 875(c), the Fifth Circuit requires that "in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *United States v. Morales*, 272 F.3d 284, 287 (5th Cir. 2001) (quoting *United States v. Myers,* 104 F.3d 76, 79 (5th Cir.1997)). But Mr. Burger's notes were made long after the purported threats, and they cannot be said to address the "context" in which the purported threats were made. Nor can the notes be said to be a "necessary preliminary" to the crime charged. Thus, Mr. Burger's handwritten copy of a passage from a thriller novel is not intrinsic to the charged offenses.

Because the evidence is extrinsic, the government must show the notes are relevant to an issue other than Mr. Burger's character. *Beechum*, 582 F.2d at 911. The government has not identified a permissible purpose for this evidence. Nor is there a permissible purpose for the notes. Mr. Burger was already in custody when he copied from the novel. Further, while Mr. Burger's intent is at issue, the government fails to show how a passage copied from a novel *after* his arrest is evidence of his intent to communicate a true threat in the statements charged in the indictment. Rather, these statements are classic character evidence—the only possible inference the jury can

14

make is that because Mr. Burger expressed an interest in a violent passage from a novel, he must also have meant to express an intent to commit an unlawful act of violence when he communicated the messages contained in the indictment, months prior.

6. **The Court should exclude the photos of Mr. Burger with firearms.**

The government notices its intent to introduce photos Mr. Burger posted of himself holding firearms.[27] The government again claims, without explanation, that the photos are intrinsic to the charged offense. In discovery the government has provided two photos of Mr. Burger holding a firearm. The first was originally taken on June 17, 2024, and depicts Mr. Burger holding a hunting rifle. The image seems to have been modified on December 27, 2024, by blurring out his face. The second picture is of Mr. Burger holding a handgun and pointing it towards a friend, which was taken on September 23, 2024.

These photos are not intrinsic to the offense. The photos were taken months before the alleged threats contained in the indictment. Furthermore, as the government recognizes in its 404(b) notice, all the firearms were removed from Mr. Burger's home *before* he made the statements alleged in the indictment. Photos of Mr. Burger with firearms he did not have access to on the date he made the purported threats cannot be said to be intrinsic to the offense charged.

Nor are the photos relevant to an issue other than Mr. Burger's character. Again, the government fails to explain how photos of firearms Mr. Burger *did not have access to* when the purported threats were made are relevant to show his knowledge, motive, opportunity, intent, preparation, plan, identity or absence of mistake or accident. Finally, any probative value is substantially outweighed by its undue prejudice and would confuse the issue before the jury. *Beechum*, 582 F.2d at 911.

---

[27] Government Exhibit 6.

7. **The Court should exclude Mr. Burger's conversation with his aunt.**

The government also notices its intent to introduce evidence of a conversation between Mr. Burger and his aunt that occurred after Mr. Burger had already been arrested and charged. The government seeks to introduce a conversation where Mr. Burger's aunt had asked him hypothetically, if she had said something against Mohammad would Mr. Burger harm her, and he responded that it would be a "redline" for him. The government's notice asserts that Mr. Burger's aunt understood this response to mean the answer to her question was "yes."

The government first argues the conversation is intrinsic to the charged offenses, but the conversation is not "inextricably intertwined" with the charged threats, nor is it a necessary preliminary to the crimes charged. *Williams*, 900 F.2d at 825. The government makes no argument as to how a conversation that occurred months after the charged conduct, and after Mr. Burger was already arrested, is intrinsic to the charged offense.

Nor does the government identify any proper purpose for this extrinsic evidence. Because the evidence is extrinsic, the government must show the statements are relevant to an issue other than Mr. Burger's character. *Beechum*, 582 F.2d at 911. The government has not, and cannot, identify how this conversation tends to prove any permissible purpose without relying on an inference about Mr. Burger's character. Instead, the government seeks to invoke cultural and religious stereotypes about what Mr. Burger meant by his use of the word "redline."

Finally, even if the Court finds Mr. Burger's statement that it would be a "redline" for his aunt to say something against Mohammad is relevant to a fact in issue, any probative value is substantially outweighed by the danger of unfair prejudice. The conversation about Mr. Burger's

religion seeks only to inflame the jury and risks the jury deciding the case based on emotion and prejudice against Mr. Burger's religion.

8. **The Court should exclude the alleged "propaganda" Mr. Burger sent online.**

The government notices its intent to introduce evidence of "Islamic State propaganda" that Mr. Burger shared online.[28] ECF Doc. No. 58 at pg. 3. The government fails, however, to identify this "propaganda," except to say it included beheading videos. *Id.* The government also fails to identify when this information was allegedly sent or to whom it was sent. To the extent the reference to "Islamic State propaganda" refers to the Discord chat that included 16 still images of violent activity, terrorism, armed Islamic militia, and crucifixion,[29] Mr. Burger objects on the same grounds as he objects to evidence from Discord generally, as set out above.

The government's notice for this alleged "propaganda" suffers from the same flaw as the government's notice for Mr. Burger's Google search history. The government first argues that the messages Mr. Burger sent are "intrinsic" to the charged offenses. But again, the government fails to explain how any "propaganda" is "inextricably intertwined" with the statements charged in the indictment. The government fails to even describe, let alone identify, the content of the messages they claim to be "Islamic State propaganda." Nor does the government's notice indicate when, in relation to the alleged threats charged in the indictment, the messages were sent or the recipient.

The purported "propaganda" is, therefore, extrinsic, and the government must show the statements are relevant to an issue other than Mr. Burger's character. *Beechum*, 582 F.2d at 911. The government fails to make any argument as to how any of these messages are relevant to one of the permissible uses in Rule 404(b). Further, any probative value is substantially outweighed by its undue prejudice and seeks only to inflame the jury. *Beechum*, 582 F.2d at 911.

---

[28] *See* Government Exhibits 16 and 19.
[29] *See* Government Exhibit 19.

9. **The Court should exclude evidence that Mr. Burger attempted to bring a firearm to school because it is not true, not intrinsic, and amounts to nothing more than character evidence.**

Finally, the government seeks to introduce testimony that once (allegedly several years ago) when Mr. Burger's grandmother was taking him to school, he brought a gun into the car with the intent of bringing it to school.[30] As a preliminary matter, there is no evidence that this incident ever occurred. At a minimum, extrinsic act evidence can "be relevant only if the act was in fact committed and only if the defendant in fact committed it." *United States v. Guerrero*, 650 F.2d 728, 733 (5th Cir. 1981).

Even if the Court finds that this occurred, it is not relevant to any fact of consequence in this case. The government fails to articulate how Mr. Burger having access to a firearm, years prior to the offenses charged in this case while he was living in a different city with different family members, is relevant to his motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Second, any probative value of these statements would be substantially outweighed by the danger of unfair prejudice, confusing the issue, and misleading the jury.

## V.    Conclusion

The government seeks to introduce numerous pieces of evidence of offenses extrinsic to the crimes charged. Indeed, of the proposed exhibits received so far, 22 out of 26 total proposed exhibits constitute improper 404(b) evidence. Given the sheer number of extraneous offenses the government wants to introduce, the trial will be so dominated by these uncharged acts that any probative value of the individual uncharged acts will be substantially outweighed by the prejudicial effect of having a trial primarily focused on uncharged conduct. *See United States v. Fortenberry*,

---

[30] Mr. Burger does not concede this in fact occurred. Defense counsel understands it never occurred and the government's source for the allegation was relaying (and misstating) hearsay.

860 F.2d 628, 632 (5th Cir. 1988). In *Fortenberry*, the defendant was charged with placing a small device in an unoccupied car, one that did little damage to the car, but the jury also heard extensive testimony concerning three attacks with crossbow arrows, one of which nearly struck a two-year old child; three incidents of arson accounting for thousands of dollars in damage; and an act of vandalism with a .22 caliber rifle. *Id.*

Just as in *Fortenberry*, the government seeks to dominate the trial not with evidence of the charged offenses, but with evidence of extrinsic acts. The evidence of the uncharged conduct will overwhelm the evidence of the charged conduct. Even if some of the uncharged conduct has some probative value, the volume of the 404(b) will overwhelm the charged conduct, and will, in effect, result in numerous "mini-trials" surrounding the uncharged acts. As the Fifth Circuit observed in *Fortenberry* "[i]n terms of both time in the courtroom and capacity to impress the jury, this tail wagged the dog." *Id*. at 631. Thus, any probative value of the uncharged acts is substantially outweighed by their prejudicial effect.

The prejudicial effect of this other act evidence is compounded by the fact that the majority of the evidence the government seeks to introduce under Rule 404(b) occurred while Mr. Burger was still a juvenile. Mr. Burger did not turn eighteen years old until October 31, 2024, well after many of the acts in the government's notice occurred. Any probative value of comments made online or in video games while he was still a child is substantially outweighed by their prejudicial effect.

Respectfully submitted,


MAUREEN SCOTT FRANCO
Federal Public Defender


_____
/s/ CHARLOTTE A. HERRING
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
TX Bar Number: 24064026


/s/ JOSE I. GONZALEZ-FALLA
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
Bar Number: Texas 08135700

*Attorneys for Defendant*

20

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of May 2026, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system which will send notification of such filing to the following:

Mark Roomberg
Keith Henneke
United States Attorney's Office
903 San Jacinto Blvd., Suite 334
Austin, TX 78701


_____
/s/ CHARLOTTE A. HERRING