**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **CRIMINAL NO. 1:25-CR-00332-ADA** |
| **JAMES WESLEY BURGER** | |
| **Defendant.** | |

<u>**GOVERNMENT'S TRIAL BRIEF** *re Miranda v. Arizona*</u>

### I.    Introduction

The *Miranda* rule serves a critical role in protecting the Fifth Amendment right against self-incrimination. However, it is not without its exceptions. Since the landmark holding in *Miranda v. Arizona* in 1966, the Supreme Court has recognized that a rigid, unyielding application of the *Miranda* rule would, in certain situations, produce results that are neither constitutionally required nor practically sound. These exceptions signify a pragmatic acknowledgment that some testimony must be permitted to come in at trial, even when *Miranda*'s requirements have not fully been met, in order to serve other compelling constitutional interests.

### II.    The *Miranda* Rule is a Prophylactic Rule with a Limited Purpose.

The Fifth Amendment states that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . .." When describing the Fifth Amendment, the Supreme Court has held that the "core protection afforded by the Self-Incrimination Clause is a prohibition on compelling a criminal defendant to testify against himself at trial." *United States v. Patane*, 542 U.S. 630, 636 (2004). While the Self-Incrimination Clause means a defendant does not have to

testify at trial, it does not bar *all* incriminating admissions; "[i]ndeed, far from being prohibited by the Constitution, admissions of guilt by wrongdoers, if not coerced, are inherently desirable . . .. Absent some officially coerced self-accusation, the Fifth Amendment privilege is not violated by even the most damning admissions." *United States v. Washington*, 431 U.S. 181, 187 (1977).

In *Miranda v. Arizona*, the Supreme Court presumed that custodial interrogation situations are inherently coercive and "concluded that additional procedural protections were necessary to prevent the violation of this important right when suspects who are in custody are interrogated by the police." *Vega v. Tekoh*, 597 U.S. 134, 141 (2002). These protections require specific warnings preceding a custodial interrogation.[1] Any statements obtained in violation of this rule are inadmissible during the prosecution's case-in-chief unless an exception applies or the suspect knowingly, voluntarily, and intelligently waives these rights. *Miranda*, 384 U.S. at 444. These warnings have become known as *Miranda* warnings.

The *Miranda* rule, however, is prophylactic in nature with a defined purpose. *See New York v. Quarles*, 467 U.S. 649, 654 (1984) ("The prophylactic Miranda warnings therefore are 'not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected.'" (quoting *Michigan v. Tucker*, 417 U.S. 433, 444 (1974)); *Moran v. Burbine*, 475 U.S. 412, 425 (1986) (describing *Miranda*'s goal as "dispelling the compulsion inherent in custodial interrogation").[2] It is not derived directly from the text of the Fifth Amendment but rather is a judicially created procedural safeguard designed to

---

[1] These warnings must inform the person that "he has a right to remain silent, that any statements he does make may not be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda v. Arizona*, 384 U.S. 346, 444 (1966).

[2] The privilege against self-incrimination is also not absolute. *See Salinas v. Texas*, 570 U.S. 178, 180 (2013) ("To prevent the privilege from shielding information not properly within its scope, we have long held that a witness 'who desires the protection of the privilege . . . must claim it'") (plurality opinion) (internal quotation marks omitted) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984)).

protect the underlying constitutional right. *See Vega*, 597 U.S. at 142 ("*Miranda* itself and our subsequent cases make clear that *Miranda* imposed a set of prophylactic rules. Those rules, to be sure, are 'constitutionally based,' but they are prophylactic rules nonetheless.") (internal citation omitted) (quoting *Dickerson v. United States*, 530 U.S. 428, 440 (2000)); *Miranda*, 384 U.S. at 467 (stating that the Constitution does not require "adherence to any particular solution for the inherence compulsion of the interrogation process" and that the prescribed *Miranda* rule in "no way creates a constitutional straitjacket").

Because of it being described as prophylactic, the courts have recognized and affirmed several exceptions to the *Miranda* rule when its underlying goal is outweighed by other factors. *See United States v. Coulter*, 41 F.4th 451, 457 (5th Cir. 2022) ("*Miranda* represents a judicially created rule that is 'justified only by reference to its prophylactic purpose, . . . and applies only where its benefits outweigh its costs[.]'") (quoting *Maryland v. Shatzer*, 559 U.S. 98, 106 (2010)).

### III.    Because the *Miranda* Rule is Prophylactic, there are Several Exceptions.

In the decades since *Miranda* was decided, the Supreme Court and lower courts have created several notable exceptions to the rule. The most significant are described below.

#### a.    Admissibility of Statements to Impeach the Defendant on Cross

It is well-established that a defendant's statement, even if inadmissible to prove guilt due to a *Miranda* violation, may be used to impeach the defendant on cross-examination. *See Harris v. New York*, 401 U.S. 222, 225–26 (1971) (holding that a defendant's statement taken in violation of *Miranda* may be used to impeach the defendant's credibility after making conflicting statements); *Felde v. Blackburn*, 795 F.2d 400, 404 (5th Cir. 1986) ("Assuming, arguendo, that these statements were inadmissible in the state's case in chief since Felde had not been given the Miranda warning before the examination . . . the statements were properly used during Felde's

cross-examination and in the prosecution's closing statement and rebuttal for impeachment purposes.") (citing *Harris*, 401 U.S. at 226); *United States v. Madoch*, 149 F.3d 596, 601 (7th Cir. 1998) (explaining that it is settled law that these statements can be used on cross for impeachment purposes); *United States v. Issaghoolian*, 42 F.3d 1175, 1177 (8th Cir. 1194) (same); *United States v. Gullett*, 75 F.3d 941, 946 (4th Cir. 1996) (same).[3]

The seminal case concerning this exception to the *Miranda* rule is *Harris v. New York*. In *Harris*, the defendant was not given proper *Miranda* warnings before he gave a voluntary confession to the police. *Harris*, 401 U.S. at 222. At trial, the defendant took the stand, and on cross-examination, the prosecution used his previous confession to contradict statements he made during his testimony. *Id.* at 223–24. In holding that the confession was admissible for impeachment purposes, the Supreme Court stated that "[t]he shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Id.* at 226.

The Fifth Circuit has long adopted and permitted the cross-examination exception to the *Miranda* rule. For example, in *Bradford v. Whitley*, the Fifth Circuit upheld the use of statements obtained despite a defendant's request for counsel for cross-examination. 953 F.2d 1008, 1010-1011 (5th Cir. 1992). Although a slightly different factual scenario than use of an un-Mirandized statement, the remedy for this violation is the same as for a *Miranda* violation, exclusion from use by the government as substantive evidence, and the court applied *Harris* to find the same cross-examination exception to that remedy. *Id*. at 1010. ("[I]t is well-settled that his statement may still be introduced to impeach his false or inconsistent testimony.") The Fifth Circuit's reasoning for the exception applies equally to un-Mirandized statements: "When a defendant chooses to take the

---

[3] The only exception to this rule is when a defendant's statements are involuntary. There is no claim in this case that any statements were involuntary.

4

stand, he assumes an obligation to speak truthfully. That the government may have resorted to unconstitutional means to obtain a confession does not mean the defendant is justified in turning the illegality to his advantage, thereby preventing the prosecution from exposing his prior inconsistent statements at trial." *Id*. at 1011. The Fifth Circuit further explained that this exception was necessary to prevent a defendant from committing perjury and "thus undermining the integrity of the trial." *Id*. at 1010-1011.

### b.  The Public Safety Exception

The public safety exception to the *Miranda* rule is another exception that highlights the limited purpose of the rule. In *New York v. Quarles*, 467 U.S. 648, 658 (1984), the Supreme Court held that police officers do not need to provide the requisite *Miranda* warnings when asking questions necessary to secure their own safety or the public's safety. In *Quarles*, the suspect was apprehended after a brief chase in a supermarket. *Id.* at 652. After discovering the suspect possessed an empty gun holster, the officers asked him where the gun was. *Id.* This question came before any *Miranda* warnings were given. *Id.* The Court held that the need to protect the public and officers from the immediate danger of an unaccounted-for gun outweighed the prophylactic purpose of the *Miranda* rule. *Id.* at 657 ("[T]he need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophetic rule protecting the Fifth Amendment's privilege against self-incrimination.").

The Supreme Court's holding in *Quarles* and subsequent responses by the Circuit Courts recognize that a rigid application of *Miranda* can have undesired consequences, and in specific moments, the balance of interests tips in favor of admitting the resulting testimony. *See, e.g.*, *Flemings v. Collins*, 954 F.2d 1109, 1114 (5th Cir. 1992) (noting that "*Quarles* entitled the police to neutralize [a] dangerous confrontation before *Miranda* took hold"); *United States v. Newsome*,

475 F.3d 1221 (11th Cir. 2007) (holding that public safety exception applied when officers asked if there was anything dangerous in the hotel room to already handcuffed suspect); *United States v. Liddell*, 517 F.3d 1007 (8th Cir. 2008) (holding that the public safety exception applied to post-arrest questioning of suspect); *United States v. Carrillo,* 16 F.3d 1046, 1049–50 (9th Cir. 1994) (questioning whether narcotics defendant had needles on his person, asked as a matter of routine rather than as a result of specific information regarding the defendant, stemmed from objectively reasonable concern for officer safety); *United States v. Edwards,* 885 F.2d 377, 384, n. 4 (7th Cir. 1989) (upholding questioning of a suspected drug dealer as to whether he was armed because "drug dealers are known to arm themselves," and the officers had an "objectively reasonable need" to protect themselves "from the immediate danger that a weapon would pose," even though defendants had already been handcuffed and frisked).

IV.    **The Exceptions to the *Miranda* Rule Exist to Support Other Interests of the Justice System.**

The creation of exceptions to the *Miranda* rule reflects a deliberate and principled recognition by the courts that the prophylactic *Miranda* rule must be weighed against other significant interests of our justice system.

Fundamentally, the courts have repeatedly held that the truth-seeking function of the justice system is itself a value of constitutional dimension. *See Brown v. United States*, 356 U.S. 148, 156 (1958) (noting that when a defendant chooses to testify, "[t]he interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination"). The *Miranda* rule was not meant to be a barrier between reliable evidence and the finder of fact. *See Michigan v. Tucker,* 417 U.S. 433, 450 (1974) ("For, when balancing the interests involved, we must weigh the strong interest under any system of justice of making

6

available to the trier of fact all concededly relevant and trustworthy evidence which either party seeks to adduce). The exception allowing prosecutors to use non-*Mirandized* statements on cross-examination speaks to this truth-seeking function; using these statements is doing "no more than utilize[ing] the traditional truth-testing device of the adversary process." *Harris*, 401 U.S. at 225–26; *see also United States v. Clark*, 553 F.2d 504, 505 (5th Cir. 1977) (noting that these statements "'provide valuable aid to the jury in assessing the defendant's credibility'") (quoting *Oregon v. Hass,* 420 U.S. 714, 722 (1975)); *Kansas v. Ventris*, 556 U.S. 586, 593 (2009) ("Our precedents make clear that the game of excluding tainted evidence for impeachment purposes is not worth the candle. The interests safeguard by such exclusion are 'outweighed by the need to prevent perjury and to assure the integrity of the trial process.'") (quoting *Stone v. Powell*, 428 U.S. 465, 488 (1976)).

Additionally, the exceptions serve important practical and public policy interests that would be undermined by a rigid application of the exclusionary rule. The public safety exception, for example, directly acknowledges the reality that law enforcement officials often face situations in which the decision to act swiftly to protect human life takes precedence over procedural formalities. *See Quarles*, 467 U.S. at 653 (stating that "this case presents a situation where concern for public safety must be paramount to adherence to the literal language of the prophylactic rules enunciated in Miranda"). Similarly, the impeachment exception serves the integrity of the judicial process by ensuring that defendants cannot use the protections of *Miranda* as a shield for perjury. *See Hass*, 420 U.S. at 722 ("[T]he shield provided by Miranda is not to be perverted to a license to testify inconsistently, or even perjuriously, free from the risk of confrontation with prior inconsistent utterances."). For both exceptions, the courts have engaged in a careful balancing of interests and have concluded that the cost of exclusion—e.g., public safety and the integrity of

trials—outweigh the incremental benefit to the suspect's Fifth Amendment right against self-incrimination.

Overall, it is understood that an absolutist approach to *Miranda* would, paradoxically, undermine public confidence in the justice system. Instead, the exceptions serve a meaningful function, ensuring that the *Miranda* rule operates as a meaningful safeguard rather than a technicality that defeats the ends of justice.

## V.    CONCLUSION

While the procedural safeguards established in *Miranda* remain a cornerstone of American criminal procedure, the courts have prudently recognized that no prophylactic rule can be applied without an examination of context, competing interests, and practical consequences. This doctrine reflects the commitment to balancing the protection of individual rights against the equally important interest of ensuring the justice system functions effectively and that reliable testimony is not needlessly excluded.

Respectfully submitted,

JUSTIN R. SIMMONS
UNITED STATES ATTORNEY

/s/_____
KEITH HENNEKE
Assistant United States Attorney
Texas Bar No. 24054497
903 San Jacinto Blvd, Suite 334
Austin, Texas 78701
(512) 370-1291

MARK T. ROOMBERG
Assistant United States Attorney
Texas Bar No. 24062266

8

601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7100

CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2026, the foregoing instrument was electronically filed

with the Clerk of the Court using the CM/ECF System and served on counsel for the defendant

via that system.

*/s/ Keith M. Henneke*
KEITH M. HENNEKE
Assistant United States Attorney