UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § § | CAUSE NO. A-25-CR-332(1)-DC |
| JAMES WESLEY BURGER | § § § | |

**OPPOSED MOTION TO AMEND CONDITIONS OF RELEASE**

TO THE HONORABLE DAVID COUNTS UNITED STATES DISTRICT JUDGE FOR THE WESTERN DISTRICT OF TEXAS:

Defendant James Wesley Burger (James) moves the Court to amend his conditions of release and remove the home detention condition pursuant 18 U.S.C. § 3145 (a)(2), because the condition no longer fits what is needed to assure court appearances or public safety, and shows the Court the following:

I.

A brief history provides context for this request. On November 24, 2025, Judge Albright unconditionally ordered James released from custody in an oral order. ECF No. 72. This followed an oral order granting James's motion to dismiss the indictment. *Id.* James had spent nine (9) months in custody. After James went free, the Government appealed the release order. ECF No. 72.

Judge Albright held a detention hearing on December 29, 2025, to address the Government's concerns. ECF No. 103. The Government objected to Judge Albright holding the hearing, arguing he lacked the power to set conditions of release because the case was on appeal to the Fifth Circuit. ECF No. 110, Det. Hearing Tr. p. 5-11. The objection was overruled. *Id.* James appeared at the hearing with his aunt and grandfather.

1

The Government called FBI Agent Nicholas Mustico.  It introduced many exhibits that related to James's previous online activity, interest in ISIS, and web searches.   Many of the same exhibits were introduced at the first detention hearing on May 27, 2025, and many of the same exhibits Judge Albright would later order excluded from trial a year later during a pretrial conference.  Agent Mustico agreed with Judge Albright that he had no proof that James was aware of the identity or background of the people he communicated with on social media or playing Roblox.  ECF No. 110, DH Tr. pp. 32-33.  The Government also conceded to Judge Albright that none of James's problematic activity "in and of itself" qualified as a crime that could be prosecuted. *Id.* at p. 36.   The Government further admitted that it lacked proof to indict James, "in and of itself," for "planning to commit a mass attack."  *Id.* at 41.

The defense called James's grandfather, Thomas J. Burger.  Mr. Burger summarized his career in the military police and as an executive with NEC (now retired for 20 years).  *Id.* at pp. 48-49.  He relayed parochial activities as an ecumenical minister and member of the Knights of Columbus.  He described his civic involvement as an elections clerk for the past 17 years, and as a volunteer with the Special Olympics, and awards announcer.  Mr. Burger promised Judge Albright that if he allowed James to live with him, James would continue weekly counseling, get a job, use a computer under close supervision, and attend weekly mass with him.

Judge Albright once again set conditions of release, but this time included home detention with electronic monitoring.  *Id.* at p. 54. Over the Government's objection, Judge Albright allowed James to attend mass with his grandfather.  *Id.* at p. 53-54.   Judge Albright did not require James to remain inside the house but wanted him to always be with a relative with GPS location.  *Id.* p. 57.  While the Government did not appeal this release order, it continued to argue before the Fifth Circuit that Judge Albright lacked the authority to release James.  <u>*United States v. Burger,*</u> 170 F.4th 395 (5th Cir. 2026). The Fifth Circuit disagreed, holding the detention hearing release order was not on appeal and it could provide no relief.  *Id.*

II.

On March 19, 2026, the Fifth Circuit reversed the order dismissing the indictment and remanded the case for trial. ECF No. 117. On the same day, pretrial notified the Court that James had violated bond conditions but requested no action be taken.[1] ECF No. 116. Judge Albright scheduled jury trial for May 18, 2026. ECF No. 118.

On April 21, 2026, the Government obtained a Second Superseding Indictment. ECF No. 120. It added "Special Findings" to Counts One and Two that asked the jury to determine if the alleged terroristic threat was a hate crime motivated by the Christian faith of the potential victims. *Id.* The defense moved to strike this surplusage from the indictment. ECF No. 129. Judge Albright set the case for a pretrial conference by Zoom on May 11, 2026. ECF No. 131. Meanwhile, the parties filed proposed trial exhibits, along with motions to exclude and allow evidence pursuant to Federal Rule of Evidence 404 (b). ECF Nos. 133 & 134. The Zoom pretrial conference proceeded as scheduled, with James appearing from Florida. ECF No. 146, PTC Tr. p. 2.

At the pretrial conference, the first Government exhibit reviewed was a screenshot of an Emo website showing a concert occurring on April 12, 2025, featuring a Christian artist. *Id.* p. 6. Judge Albright asked what evidence showed that James had any awareness of the concert taking place on April 12. *Id.* The Government argued it "was a logical circumstantial inference" that when James picked the date on Roblox "he saw something, and this was the exact date that the Christian concert was going to be held in Austin." *Id.* at 7. Judge Albright asked, "Beyond the leap you're making that he said April 12th and this concert was on April 12th, do you have any

---

[1] The report said James tested positive for marijuana on January 5, 2026, and failed to report for a drug test on February 26, 2026. ECF No. 116. He gave pretrial a UA the day after he missed the appointment. The report also noted occasions when James had failed to follow pretrial schedules for approved absences from his residence. James explained that he was with his grandfather when the lapses occurred. Pretrial reviewed third-party custodian duties with Mr. Burger; he took responsibility and promised to abide by them. *Id.* The Government did not agree with pretrial's recommendation that no action be taken. *Id.*

3

evidence that establishes the defendant was aware of this concert taking place on April 12th?" The Government said, "Your Honor, we can't get inside the defendant's mind so ---" Judge Albright responded, "But you have his – computer history, you have all this other stuff, what evidence do you have that would support this?" The Government said that there was a "screenshot" of "Live Nation" which put the concert on, and that in Google searches he looked for Live Nations as well." *Id.* p. 7.

The defense countered that this exhibit, as well as most of the Government's trial exhibits, were "problematic" because they "go far outside of the Roblox context." *Id.* p.9. The exhibits came from "other platforms, Google searches, Internet browsing history," all of which were items that the recipients of the "threats" could not have been aware of because the threats happened in the context of the Roblox. *Id.* The defense framed the intent as for the jury to decide whether James intended his statements on Roblox to be a threat. Therefore, the Government's efforts to prove that James was a terrorist and planned to attack a Christan concert was not relevant to the intent issue before the jury. *Id.* p. 10. "So generalized evidence that the government believes shows Mr. Burger is a terrorist doesn't inform whether he intended the specific charged statements on Roblox to be threats." *Id.* The Government disagreed. It maintained that all of James's out-of-Roblox activity, such as showing loyalty to ISIS or discussing violence against police, up to when he "finishes his plans, picks his dates, makes his threats… are all intrinsic to the crime." *Id.* at 11.

Judge Albright ruled against the Government, saying:

> Let me make [this] as clear as I can, this case is going to be only about whether or not a jury finds that the three postings in January are – qualify as a threat. The jury's not going to hear about a grand conspiracy starting back in July – if that's the government's intent, let me make as clear as I can, it's not going to come up in the opening. ***
> The only thing we are going to get into in this case is the government establishing whether or not it meets the statute – whether the three statements meet the statute and are actual threats. That's what --- not the planning stuff. Not all – none of the other stuff is going to come in. We're going to go through it one at a time, but that's not going to happen

4

in this trial

*Id*. 12.

Consistent with this finding, Judge Albright excluded all Government exhibits that related to activities occurring outside of Roblox that could not have been known to persons playing in Roblox who witnessed the "threats" and reported them to the FBI.  Judge Albright also granted the defense's motion to strike the hate crime special finding from the indictment.  ECF No. 138.  The next day, Judge Albright entered a written order formalizing his rulings.  *Id.*

## III.

On May 13, 2026, the Government filed its notice of appeal.  ECF No. 140.  The appeal challenged the order striking the special findings from the Second Superseding Indictment and the order excluding twenty-seven Government's exhibits.  *Id*.  Trial was set to start on May 18, 2026.  But now with the government's interlocutory appeal of Judge Albrights pretrial rulings, the trial will be delayed for months.

The Government faces a tough challenge on appeal.   A highly deferential abuse of discretion standard applies.  *United States v. Williams,* 30 F.4th 263 (5th Cir. 2022).   To win, the Government will need to show that the rules of evidence gave Judge Albright no choice but to admit exhibits that "in and of themselves" were insufficient to prove that James committed a crime, which related to activities that occurred outside of the context of Roblox, beyond the perception of the tipsters who witnessed the "threat."

The opinion in *United States v. Burger,* 170 F. 4th 395 (5th Cir. 2026) supports Judge Albright's ruling.  When the Fifth Circuit remanded the case for trial, the opinion targeted the Roblox "context" as being "disputed" and observed that the "true threat" analysis was "materially incomplete without further evidence, particularly the testimony of the two tipsters."  *Id.* at 402.  Although many of the trial exhibits that Judge Albright excluded were in the appellate record,

5

having been introduced at both of James's detention hearings, and the Government's briefing that argued that this material provided support to find that the threats were credible, the Fifth Circuit did not mention these materials as being relevant to the "true threat" analysis.

Moreover, Judge Albright's written order dismissing the indictment, that was the subject of the Government's appeal, rejected the Government's theory of relevance of the out of Roblox activities.  ECF No. 91.   The order stated:

> There is no claim that a recipient of the threatened communications was made privy to that evidence.  Accordingly, the evidence is *extrinsic, out-of-context, and irrelevant* to the jury's determination whether Mr. Burger's communication was a true threat.

*Id.* p. 5 (emphasis added).    The *Burger* opinion left this analysis intact.   Indeed, the Fifth Circuit's analysis of what was relevant to the trial on remand focused on the tipster evidence.

To be clear, both Judge Albright and the Fifth Circuit put the Government on notice that any evidence arising outside of Roblox would be extrinsic and irrelevant to the jury's determination.  The Government ignored these warnings and sought to introduce these irrelevant matters.   Judge Albright excluded the evidence in line with the clear analysis contained in his order dismissing the indictment. That he would find the excluded exhibits to be "extrinsic, out-of-context, and irrelevant" was foreseeable and proper.   The Government's appeal lacks merit.    The weak remnants of the Government's case will likely not support a guilty verdict.

IV.

For the past six months under home detention, James has been rebuilding his life.  He attends weekly mass, participates in counseling sessions, seeks employment, works temporary jobs, takes driving lessons, volunteers at the church food bank, and receives mental health care

services.[2] Meanwhile, under home detention, he wears an ankle bracelet that transmits his location to pretrial services. James must plan his activities a week in advance and get approval for them from pretrial services. With no trial date set, this requirement has become truly burdensome and unnecessary. Mr. Burger, who is with James every day, assures the Court that James not "a dangerous young man" and that the government is mistaken in its view.

V.

James also actively engages with the Parents for Peace (P4P) intervention program.[3] His participation began on October 5, 2025, while in custody, and has continued to date; he has now completed fifty-five 1-hour weekly sessions. This organization was recommended to James's family by the FBI following his arrest.[4] They provide intervention programs to assist families and individuals disengaging from extremist influences by providing education, structured assignments, and peer support. In their letter to the Court, P4P reports that James's progress has been consistent, that he has developed an awareness of the challenges that led to his vulnerabilities to being influenced by radicalized groups, and that with their guidance, he is developing practical coping strategies to address the problematic behavior that led to the current charges. The P4P team, like James's grandfather, have requested that the Court remove home detention from the conditions of release.

VI.

Assistant US Attorneys Mark T. Roomberg and Keith Hennecke are opposed to James's request. They do not intend to write a written response in opposition unless requested by the Court.

---

[2] *See* Exhibit One, Letter from Thomas J. Burger, attached.
[3] *See* Exhibit Two, Letter from Parents For Peace, attached.
[4] Dana Best, James's aunt, with counsel's assistance, arranged for Parents For Peace to intervene with him while he was still in custody.

FOR THESE REASONS, James Burger respectfully requests that this Honorable Court enter an order removing home detention as a condition of release.

Respectfully submitted.

MAUREEN SCOTT FRANCO
Federal Public Defender

/s/ JOSE I. GONZALEZ-FALLA
Assistant Federal Public Defender
Western District of Texas
Lavaca Plaza
504 Lavaca St., Ste. 960
Austin, Texas 78701
(512) 916-5025
(512) 916-5035 (FAX)
Bar Number: Texas 08135700
*Attorney for Defendant*

8

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of June 2026, I electronically filed the foregoing

Motion to Permit Travel from Florida to Texas, with the Clerk of Court using the CM/ECF

system which will send notification of such filing to the following:

Mark T. Roomberg
Keith Hennecke
Assistant U.S. Attorneys
816 Congress Ave., Ste. 1000
Austin, TX 78701

/s/Jose I. Gonzalez-Falla

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § | |
| V. | § § | CAUSE NO. A-25-CR-332(1)-DC |
| JAMES WESLEY BURGER | § § | |

**O R D E R**

On this day there came before the Court the Defendant's Motion to amend the current conditions of release to remove the requirement of home detention and after considering same it is hereby GRANTED.

All other bond conditions remain in effect.

SIGNED THIS _____ DAY OF _____, 2026.

_____

DAVID COUNTS
UNITED STATES DISTRICT JUDGE